[Civ. No. 32542. Second Dist., Div. Five. June 9, 1969.]

GEORGE M. WIENER et al., Plaintiffs and Appellants, v. F. L. VAN WINKLE et al., Defendants and Appellants.

Robert A. Klein for Plaintiffs and Appellants.

Wadsworth, Fraser, McClung & Dahl and Charles E. Mc-Clung for Defendants and Appellants.

STEPHENS, J. — The original complaint of plaintiffs George M. Wiener and Herbert D. Wiener (hereinafter, the Wieners) was filed on June 6, 1966. It was framed in two causes of action. The first cause of action sought to impose liability on defendants F. L. Van Winkle and Helen E. Van Winkle (hereinafter, the Van Winkles) as guarantors of a promissory note. The second cause of action sought to impose liability on the Van Winkles as indorsers of the same note. The Van Winkles' answer was filed June 17, 1966.

By stipulation, the Wieners' first amended complaint was filed. It was framed in five causes of action. The first three sought to impose liability on the Van Winkles as indorsers of the note. The fourth cause of action was on the written guaranty agreement, and the fifth cause of action sought to reform the written guaranty to accord with the true intent of the parties. The indebtedness guaranteed was that of the makers, 616 Development Company (hereinafter, the makers).

The answer to the first amended complaint was filed September 1, 1966. In general, the answer denied presentment and notice of dishonor, though admitting an oral demand, and alleged that prior to the filing of the amended complaint, the Van Winkles had offered to pay the full amount due on the note, conditioned on reassignment of the beneficial interest in the deed of trust.[1] Answering the cause of action for reformation, the Van Winkles admitted that the parties intended that the indebtedness guaranteed would be the indebtedness of the makers of the note. The Van Winkles alleged, however, that

---

[1]Paragraph IV of the Van Winkles' answer to the Wieners' second cause of action in their first amended complaint provides, in part, as follows: ". . . these answering defendants admit that plaintiffs have demanded that they pay said note and that prior to the filing of the Complaint they refused to pay said note or any part thereof. Further answering said paragraph, these answering defendants allege that subsequent to the filing of the Complaint and prior to the filing of the First Amended Complaint . . . they offered in writing to pay said note together with all accrued interest subject to the condition that the beneficial interest in the Deed of Trust securing said note be reassigned to them."

the parties also intended that in the event of nonpayment of the note, the Wieners would exercise the power of sale under the purchase money deed of trust before looking to the Van Winkles for any deficiency.

The Van Winkles subsequently obtained knowledge of facts which, in the opinion of their counsel, would constitute an additional defense to the action. The Van Winkles' motion for leave to amend the answer was granted. Essentially, the amendment alleged that the Wieners had unreasonably refused an offer by the makers to pay the note, and that such refusal exonerated the Van Winkles as guarantors. The amendment further alleged that the conduct of the Wieners had damaged the security, and that the Van Winkles were exonerated to the extent of the damage.

The case was tried without a jury. Judgment for the Wieners was entered for the difference between the note and the proceeds of the foreclosure sale, plus interest from the date of the sale to entry of judgment. The written guaranty was ordered reformed to provide that the indebtedness guaranteed by the Van Winkles was the indebtedness of the makers. The judgment denied the Wieners' claim for attorney's fees. The Van Winkles appealed from the judgment. The Wieners appealed from the portion of the judgment denying their claim for attorney's fees.

The facts of the case are essentially undisputed. In November of 1964, the Van Winkles sold certain real property to the makers. As part of the purchase price, the Van Winkles received a promissory note. The note was secured by a purchase money deed of trust on the property sold. In January of 1965, the Van Winkles sold the note to the Wieners. The Van Winkles assigned the note to the Wieners with recourse. The Van Winkles also delivered to the Wieners through escrow a document intended to be a written guaranty of the note.

The due date of the note was May 18, 1966. In April 1966, and again on May 17, 1966, the makers sought an extension of time from the Wieners for payment of the note. The second request was for an extension of time to June 21, 1966. These requests were denied. It was explained by the Wieners that to grant the request might jeopardize their legal position against the Van Winkles (indorsers and guarantors). The Wieners thereupon telephoned the Van Winkles, informing them of the impending default of the makers, and asked that the Van Winkles make arrangements to pick up the note, trust deed, and personal guaranty in exchange for the amount due. The

Van Winkles assured the Wieners that they would honor their obligations under the indorsement of the note and the guaranty agreement, had figured the exact amount due, and would pay the note. The Van Winkles informed the Wieners, however, that they did not have cash with which to pick up the note, and asked that no action be taken by the Wieners for a few days so the money could be raised. This was agreed to by the Wieners. On May 19, 1966, the Van Winkles called the Wieners and stated that they were having difficulty in raising the money, and requested an extension to June 21, 1966. The Wieners agreed to the extension upon a condition which was not met by the Van Winkles.[2] On May 27, the Wieners received a telephone message from the Van Winkles that the makers were out of town and would return on May 31. On May 31, the Wieners heard nothing from the Van Winkles, and calls made by the Wieners to the Van Winkles on June 1 were not returned.[3]

At this time, the Wieners turned the file over to their attorney, Robert A. Klein, to bring an action. Klein and the Wieners agreed that Klein would receive as his sole compensation whatever attorney's fees might be awarded under the attorney's fees clause in the note and guaranty agreement. The Wieners would not share in any such fees, and would have no liability for attorney's fees.[4]

After the default upon the note (which was due and unpaid on May 18, 1966), a complaint was filed on June 6, 1966. On June 10, 1966, Klein received a call from a Mr. Linton, an attorney. The record shows that Linton represented only the makers of the note, though prior to an exchange of letters between the Wieners and Linton, it appears that the Wieners understood it was the Van Winkles for whom Linton was attorney. This apparent misunderstanding by the Wieners does not affect the merits of the action, but to some extent it explains the request for attorney's fees later discussed. Linton represented that he would "try to dispose of it in such a way that there would be no litigation" if the Wieners would

[2]The condition for the extension to June 21 required the signature of the Van Winkles and the makers upon a penalty note.

[3]There is evidence that on May 26, 1966, the makers had a line of credit with Bank of California in the amount of $50,000. The funds to pay off the note were, as stated by the makers of the note, to "be forthcoming in June," and that, in fact, the money was borrowed on June 15 under this bank credit.

[4]Both George Wiener and Klein are lawyers and partners except; apparently, as to any right to share in attorney's fees in this action, it being a matter handled in an attorney-client relationship.

forward the promissory note and trust deed to him "to be held in trust [until the makers] would pay it off . . . on June 29, 1966," or would send it to the Bank of California, along with a Request for Reconveyance and their demand for principal, interest, costs, and attorney's fees. He stated that he "never objected to a colleague obtaining reasonable attorney's fees and [he] would like to know what the demand of [the Wieners] would be in connection with this trust deed." Klein subsequently informed Linton that it would be preferable to use the bank, and since the action had been commenced, he would request $1,900 as attorney's fees, pursuant to the default fee schedule set by the rules of the Los Angeles Superior Court. When Linton objected to the payment of attorney's fees, he was advised by Klein that the Wieners would accept the full amount of principal and interest due on the note and would assign the note and trust deed back, leaving the matter of attorney's fees and court costs incurred to be decided by the court. Linton thereupon rejected Klein's offer. At no time did Linton unconditionally offer or tender to the Wieners the moneys due, and at no time did he submit an offer in writing to pay the principal and interest due on the note. In fact, the makers did not have the funds in hand until June 15, and no offer or tender was thereafter made by them, either personally, or through Linton.[5] One of the partners composing the makers testified that no offer was made by him personally after the Wieners refused the extension; that on June 10, he "did not have the cash, but [he] had the ability to have it" on that day; that he "didn't want [the cash] until June 20 because [he] had another note." Also, he testified that he never made an offer in writing to pay off the principal and interest due, unless Linton had written a letter for him, because he had turned everything over to Linton. On hearing about the attorney's fee request, he refused to pay the requested amount.

 The first contention of the Van Winkles is that the

---

[5]On June 14, Linton called Klein and told him the makers refused to pay the requested attorney's fees and "had returned the papers, the summons and complaint to Mr. Van Winkle, or one Van Winkle, and that as far as [Linton] was concerned [Linton] had nothing further to do with the matter." He stated also that he did not remember making any tender of payment subsequent to June 21, 1966, and on or about October 26, 1966, told Klein that the makers "no longer had available under [their] thumb, a loan." This statement was in response to a specific statement that the Wieners were willing to accept principal and interest and foreclosure costs plus statutory attorney's fees for the foreclosure in the amount of $212.50.

rejection by the Wieners of the makers' offer through Linton to pay the note after it was due discharged the Van Winkles' liability as secondary obligors because the makers' offer constituted a tender. The trial court found that the offer of performance by the makers was not free from an improper condition and therefore failed as a tender. The record supports that finding. ■ It is well established that a tender must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a refusal to perform. (Civ. Code, §§ 1494, 1498; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 229, p. 258.) ■ The condition imposed by the makers was that the Wieners must eliminate or reduce their claim for attorney's fees. Furthermore, they refused to pay the note and interest and leave to litigation the Wieners' right to an amount for any attorney's fees. Both the promissory note and the written guaranty provide the Wieners with a contractual right to this claim. The offer was ineffective as a tender.

■ In paragraph IV of their answer to the first cause of action in the Wieners' first amended complaint, the Van Winkles allege: ''Answering paragraph VI, these answering defendants allege that subsequent to the filing of the original Complaint and prior to the filing of the First Amended Complaint these answering defendants offered and tendered to plaintiffs the full amount of the principal due on said promissory note together with all accrued interest and together with all actual out-of-pocket expenses incurred by plaintiffs by way of legal costs subject only to the condition that the beneficial interest under the Deed of Trust be reassigned to defendants so that they might proceed with the foreclosure thereof.'' The Van Winkles' reply brief states that their reference to ''tender'' has no relation to the ''tender'' allegedly made by Linton on behalf of the makers. As we read the argument of the Van Winkles, we reach the same conclusion as did the Wieners as to this contention of the Van Winkles. The ''tender'' relied upon by the Van Winkles was that of the makers. Since, however, reliance is placed upon an alleged ''tender'' made directly by the Van Winkles, we have searched the record for its supporting evidence. We find but one reference to such ''tender,'' and that is contained in a letter dated July 19, 1966 from Klein to the attorney for the Van Winkles. In that letter Klein stated in part: ''Receipt is acknowledged of Mr. McClung's letter of July 15, 1966. . . . In connection with your 'offer and tender' of the full amount of principal

and accrued interest and out-of-pocket expenses which the Wieners have paid, exclusive of the claim of attorney's fees, kindly be advised that we are most willing to enter into a stipulation for judgment for such amounts provided, however, that any such stipulation contains a provision that the plaintiffs will further be awarded reasonable attorney's fees as may be determined by the court (or if you prefer by arbitration)." The Van Winkles urge that this is an admission of "tender." The letter of July 15, 1966 alluded to was not admitted in evidence.[6] A later portion of the July 19 letter precludes the conclusion that there was in fact a tender or that the Wieners admitted any such tender. The fourth paragraph of the July 19 letter states: "Your letter further suggests that your clients will not have sufficient cash to pay a judgment and will therefore enter into a confession of judgment provided that the Wieners reassign their beneficial interest under the deed of trust. I am sure that you must realize that there is no conceivable way the Wieners can give up their security in the property until they are paid in full for the amount of their claims, including attorney's fees. We do not consider a confession of judgment as being the equivalent of payment in full and we therefore must respectfully decline this portion of your offer. If the Van Winkles desire to pay the full amount of the Wieners' claim you may rest assured that the Wieners' beneficial interest in the trust deed will be promptly reassigned to your clients. . . ." Thus, as the trial court concluded, the acknowledging purport of the communication was with reference to an offer less than a full tender, not a tender.

The Van Winkles' next contention is that since the Wieners knew that the Van Winkles were unable to pay the note, and since the Wieners had reason to believe that the land was of insufficient value to satisfy the amount due, their failure to accept the offer of the makers on June 10, 1966 was unreasonable. To support this position, the Van Winkles cite section 2845 of the Civil Code, which states: "A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is

[6]There is some confusion in the reporter's transcript, as well as in the clerk's transcript. The clerk's transcript shows the letter "admitted" as Exhibit E, but also notes "no exhibit." A full reading of the reporter's transcript (p. 306, lines 17-26 and p. 307, lines 1-15) indicates the letter was not admitted into evidence.

exonerated to the extent to which he is thereby prejudiced."
Again, however, the record shows that the offer by the makers
was made with the condition that the Wieners compromise
their claim for attorney's fees. The Wieners did not act un-
reasonably in refusing this conditional offer. When the dis-
pute over fees arose, the Wieners' attorney counter-offered to
settle the matter by suggesting that the makers pay the
amount of the note plus accrued interest, and allow the court
to decide the issue of attorney's fees. The makers refused this
offer, and at no time unqualifiedly tendered the amount due
on the note, leaving to litigation the Wieners' claimed right
to attorney's fees. Under the circumstances, the Wieners did
all they were legally required to do in order to collect the
amount due from the makers.

 As an adjunct to their contention that a proper ten-
der was made, the Van Winkles argue that the Wieners had
no proper claim for attorney's fees because the contract be-
tween the Wieners and their counsel was illegal. If this is
true, then it is argued that the condition which the makers
imposed regarding fees in their offer to pay the note was
proper, and the offer, being a proper tender, was wrongfully
rejected by the Wieners. As we have heretofore noted, at no
time was there a specific tender of the amount due on the
note. The provisions in the attorney-client contract were that
Klein would receive as his sole compensation whatever attor-
ney's fees might be awarded or agreed upon under the attor-
ney's fees clause in the note and guaranty agreement. The
Wieners were to receive the principal and interest in full. The
Van Winkles argue that this kind of contingent fee contract
has an undue tendency to promote litigation for the benefit of
the attorney; that in so doing, it thwarts the possibility of
settlement. We see neither merit nor reason to this contention.
Under Code of Civil Procedure section 1021, the parties are
authorized to enter into an agreement with respect to the
mode of compensation of attorneys. An agreement for
payment of attorney's fees of the prevailing party is enforce-
able as an item of special damages, and a contract may permit
recovery of attorney's fees in the event of suit to enforce the
contract. (*Anger* v. *Borden,* 38 Cal.2d 136, 145 [238 P.2d
976]; *Citizens Suburban Co.* v. *Rosemont Dev. Co.,* 244 Cal.
App.2d 666, 683 [53 Cal.Rptr. 551].) The Van Win-
kles had made two separate, express written promises to pay
attorney's fees if an action was required to be brought to
enforce their obligations to the Wieners in the event the

makers failed to pay the note. There is nothing in the attorney-client contract which inherently thwarts settlement. The mere fact that the contract requires the attorney to rely on the discretion of the court to determine the reasonable value of his services, as in this case, in no way encourages unnecessary legal proceedings. The Van Winkles had a fixed contractual obligation to pay reasonable fees upon default of the note, and it was not shown that Klein acted unreasonably in relying on the Los Angeles County Superior Court default fee schedule in determining such fees once the note was in default and an action had been filed. The right to seek enforcement of the note, including attorney's fees, was fixed at the time action was commenced to enforce the contract.

■ Next, the Van Winkles argue that the promissory note was not presented for payment, and that lack of presentment cancels their liability as indorsers. The contention is without merit. As previously noted, the makers on two occasions requested extensions of time for payment of the note. The Van Winkles also sought an extension to enable them to raise the money. Under such circumstances, the Van Winkles are estopped to raise any alleged imperfection in presentment. Commercial Code section 3511, subdivision (2)(a) states that presentment may be excused if waived expressly or by implication by the party to be charged. The conduct of both the makers and the Van Winkles constitutes a waiver of any defect in presentment. (*Katz* v. *Haskell,* 196 Cal.App.2d 144, 150 [16 Cal.Rptr. 453].) ■ The Van Winkles also argue that since the Wieners were not the holders of the note on the date suit was commenced, they were powerless to make a presentment. The record shows that the Wieners had assigned the note to Union Bank as collateral security for a loan. This fact is immaterial since the evidence shows, and the trial court found, that prior to commencement of this action Union Bank authorized reassignment to the Wieners whenever necessary for collection.

The next contention of the Van Winkles is that the Wieners are estopped to recover because of their conduct in failing to put the makers to an election and to foreclose at an earlier date. In other words, it is argued that the failure of the Wieners to file a proper Notice of Default and Election to Sell resulted in the failure of the makers to redeem the property and pay the note. This suit is based upon the obligation of the Van Winkles as both indorsers of a promissory note and as guarantors for the payment of such note.

█ The Van Winkles' obligation as indorsers is totally separate and independent from that of the makers, and exists without regard to the security. In *Stephenson* v. *Lawn,* 155 Cal.App.2d 669, 671 [318 P.2d 132], the indorser sought to condition his liability on the security. Rejecting this contention, the court ruled that " '. . . the creditor loses no rights against the indorser, whose liability has become fixed, by mere failure to enforce his lien against the property mortgaged for security for the debt.' [Citation.]''

The same rule formerly applied where the holder of a note sought to enforce the obligation of a defendant as a guarantor, as distinguished from a surety. (See *Everts* v. *Matteson,* 21 Cal.2d 437, 444 [132 P.2d 476] and *Loeb* v. *Christie,* 6 Cal.2d 416, 418 [57 P.2d 1303].) However, there is no longer any distinction in California between sureties and guarantors. (Civ. Code, § 2787; *Bloom* v. *Bender,* 48 Cal.2d 793 [313 P.2d 568]; *American Guar. Corp.* v. *Stoody,* 230 Cal.App.2d 390 [41 Cal.Rptr. 69].) █ Thus, the abolition of the distinction between sureties and guarantors abolished the rule in contracts of guaranty that the obligation of the principal debtor and that of the guarantor were entirely independent obligations. █ A continuing guaranty is now a form of suretyship obligation and is subject to all provisions of law relating to suretyship. (*American Guar. Corp.* v. *Stoody,* supra; *Hill & Morton, Inc.* v. *Coughlan,* 214 Cal.App.2d 545 [29 Cal.Rptr. 550].) █ Since the guaranty agreement is subject to sections 2845 and 2849 of the Civil Code.⁷ Those sections provide a surety with the power to require the creditor to pursue the primary obligor and entitle him to the benefit of every security for performance of the principal debt. The guaranty agreement under consideration in the present case, however, purports to waive these statutory rights. Paragraph 5 of the guaranty agreement provides: ''The [Weiners] need not take any action against Debtor, any other guarantor, or any other person, firm or corporation or resort to any security held by it at any time before proceeding against [the Van

---

⁷Civil Code, section 2845: ''A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced.''

Civil Code, section 2849: ''A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not.''

Winkles]." Unless such waiver is contrary to public policy, the quoted provision of the guaranty agreement would effec-. tively deprive the Van Winkles of the benefit of Civil Code sections 2845 and 2849. Two recent cases have ruled that such statutory rights of the guarantor (surety) may be waived, and that such a waiver provision is not invalid as opposed to public policy. (*Engelman* v. *Bookasta*, 264 Cal.App.2d 915 [71 Cal.Rptr. 120] ; *American Guar. Corp.* v. *Stoody, supra*; see also Civ. Code, §§ 3268, 3513.) ▮ We see no reason why a guarantor should not be permitted to waive his right by contract to require the creditor to proceed against security provided by the principal debtor. There is no material difference between the waiver in the cited cases and the one in the present case. As stated in *Engelman* v. *Bookasta, supra,* at page 918: "We interpret defendant's waiver as expressing an intention to waive any and all rights arising out of or incidental to the existence of the security. . . The waiver was without limitation, and it constituted a contract between the plaintiffs and the defendant that for all purposes the debt of the defendant created by his guaranty was to be considered as unsecured." ▮ We conclude that the Van Winkles' rights under Civil Code sections 2845 and 2849 have been waived. Thus, whether liability is sought to be imposed upon the Van Winkles as indorsers or guarantors, the result is the same.

▮ Other prejudice to the Van Winkles is claimed by the fact that the property was physically damaged and reduced in value during the delay before foreclosure. This is immaterial since we have concluded that the Van Winkles' obligation was not dependent on the security. In any event, there is nothing in the record to establish that a greater amount would have been received at the foreclosure sale if it had been held at an earlier date. The trial court made no finding that the property was in a different state of disrepair on June 6, 1966 (the date of commencement of this action) than on November 7, 1966 (the date of the Notice of Default and Election to Sell was recorded). No such finding was requested by the Van Winkles.

▮ In their cross-appeal, the Wieners contend that it was error for the trial court to refuse to award attorney's fees to them in their successful suit for recovery on the note. The promissory note specifically provided, with respect to attorney's fees: "If action be instituted on this note I promise to pay such sum as the Court may fix as attorneys' fees."

The continuing guaranty agreement by which the Van Winkles guaranteed payment of the note if the makers defaulted, likewise provided for attorney's fees, as follows: "3. I guaranty unconditionally and promise to pay to [the Wieners] or [their] order, in any coin or currency which at the time of payment is legal tender in the United States, each item of indebtedness hereby guaranteed and to perform each guaranteed obligation when due. My liability under this agreement shall not exceed at any one time the principal amount set above my signature hereto, interest thereon, and the cost, attorneys' fees and other expenses provided for in Paragraph 15 hereof."

"15. I agree to pay to [the Wieners] without demand reasonable attorneys' fees and all costs and other expenses incurred by [them] in collecting or compromising any indebtedness of Debtor hereby guaranteed or in enforcing this Guaranty against me or any other guarantor." Although the promise contained in the note is originally that of the makers, the Van Winkles, as indorsers, promised to pay the note according to its tenor. They assumed the obligation of attorney's fees upon defaulting on their obligation as indorsers. (Com. Code, § 3414, subd. (1).)[8] Under such obligation, the trial court was bound to ascertain such fees. The trial court found that the Wieners did not incur attorney's fees and concluded that the Van Winkles therefore had no obligation to pay such fees. This finding is incorrect.

 The purpose of upholding an attorney's fees provision in a promissory note is to allow a plaintiff to recover the full amount due him without such amount being diminished by attorney's fees. In *Bank of Woodland* v. *Treadwell,* 55 Cal. 379, 380, our Supreme Court held: "The object of the law allowing counsel fees is not to afford an opportunity, under the cover of the name, for a speculation on the part of the creditor, but to reimburse him, in a proper amount, for a sum which he pays, or becomes liable to pay, *or to relieve him of the burden of paying counsel fees.*" (Italics added.) In the present case, the agreement between the Wieners and their counsel was quite clearly within the scope and purpose

[8]Commercial Code, section 3414, subdivision (1): "Unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so."

of the law in allowing attorney's fees. The promissory note does not require that the Wieners "incur" attorney's fees; rather, it provides that the Van Winkles will pay "such sum as the Court may fix as attorneys' fees." To deny the Wieners such fees where the Van Winkles clearly defaulted in their obligation would deprive the Wieners of the benefit of their agreement.

The Van Winkles nevertheless maintain that the trial court's ruling in this respect was correct on the basis that the underlying attorney-client contract was illegal and violative of public policy. The Van Winkles argue that the contingency agreement between the Wieners and Klein divided the claim against the Van Winkles and, in effect, placed the interests of the Wieners and their counsel in conflict. There is nothing in the agreement under consideration to create two actions, one for the collection of the note, and the other for attorney's fees. The fact that there was a limit of liability does not alter the obligation to pay that which the court determined was the reasonable value of such services. The only "contingency" here is as to the amount to be set by the court. In *Isrin* v. *Superior Court*, 63 Cal.2d 153, 158 [45 Cal.Rptr. 320, 403 P.2d 728], the court clarified the nature of an attorney's interest in a contingent fee contract. After reviewing two lines of decisions—one speaking in terms of "liens" and another in terms of "vested equitable interests"—the court stated: "For our present purposes, however, we need not attempt resolution of such conflicts in the law of attorney's liens. It will be enough to observe that in whatever terms one characterizes an attorney's lien under a contingent fee contract, it is no more than a *security* interest in the *proceeds* of the litigation. As explained in one of the leading cases on the subject, the attorney's lien is 'an equitable right to have the fees and costs due to him for services in a suit *secured to him out of the judgment or recovery* in the particular action, the attorney to the extent of such services being regarded as an equitable assignee *of the judgment.*' . . . [Italics added.] (*Tracy* v. *Ringole* (1927) supra, 87 Cal.App. 549, 551 [262 P. 73].)" And in *Fifield Manor* v. *Finston*, 54 Cal.2d 632, 641 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], the court stated: "Such contracts do not operate to transfer a part of the cause of action to the attorney but only give him a lien upon his client's recovery." Furthermore, the record affirmatively shows that Klein did not take an interest in the action that was in conflict with his client's interest. At

trial, he was asked, "Do I understand then that they [the Wieners] assigned to you the portion regarding attorney's fees, that you were a part owner in this note or did they still hold the note?" Klein answered, "No, I am not a part owner in the note. It was just an understanding we had between ourselves that in the event the Court awarded attorney fees I would receive the attorney fees for my services." Thus, Klein's right to fees derived solely through his clients, and their agreement merely fixed the amount due for his services. (See *Meadow* v. *Superior Court,* 59 Cal.2d 610, 615 [30 Cal. Rptr. 824, 381 P.2d 648] ; *Schwartz* v. *Schwartz,* 119 Cal.App. 2d 102, 104-105 [259 P.2d 33].)

Other contentions of the Van Winkles need not be considered since such contentions are fatally dependent upon issues previously answered.

The judgment is affirmed except as to the denial of attorney's fees, and as to that, the judgment is reversed with directions that the trial court determine the amount of reasonable attorney's fees as part of the Wieners' damages, and enter judgment in accordance therewith.

. Kaus, P. J., and Reppy, J., concurred.

The petition of the defendants and appellants for a hearing by the Supreme Court was denied August 6, 1969.