[Civ. No. 44919. Second Dist., Div. Four. Jan. 9, 1976.]

UNION BANK, Plaintiff and Respondent, v.
AL ROSS et al., Defendants and Appellants.

COUNSEL

Long & Levit and Richard B. Wolf for Defendants and Appellants.

Loeb & Loeb, Jerome L. Goldberg and Robin Meadow for Plaintiff and Respondent.

OPINION

**KINGSLEY, Acting P. J.**—This is an action on four continuing guaranties in favor of plaintiff Union Bank. Two of the guaranties were executed by defendants Al Ross and Sheila Ross, and the remaining two guaranties were executed by defendants Irving Holender and Miriam Holender. The obligation giving rise to the claims were represented by a promissory note executed by Carnaby Street Fish & Chips, Inc. for $100,000. Judgment was entered against all defendants for $124,577.89 with taxable costs.

The Rosses counterclaimed against Union Bank for attorney fees, wrongful withholding of depository funds, breach of agreement to lend money, wrongful failure to satisfy the debt of the collateral, and conversion of stock pledged by the Rosses to secure the obligations of Carnaby to plaintiff. Plaintiff's motion under section 631.8 of the Code of Civil Procedure was granted. Findings of fact and conclusions of law were filed.

The Rosses cross-complained against the Holenders for indemnity and judgment for the Rosses was granted. The Rosses have appealed from the judgment against them and in favor of the bank; the Holenders have not appealed. We affirm the judgment appealed from, with a minor modification as to the computation of interest.

Holender sold to Al Ross 50 percent of Carnaby's stock and Al Ross became the corporate attorney and a director of Carnaby. Mr. Ross is a licensed lawyer, but he operates nearly full time in the business management field. Carnaby had its own general manager, and Al Ross did not manage Carnaby on a day-to-day basis.

Carnaby sought a loan with Union Bank, and Ross agreed to pledge his $60,000 personal savings account at Home Savings. All the defen-

dants also agreed to pledge stock. Union Bank made the loan and defendants executed a continuing guaranty. Ross did not read the guaranty and the terms and conditions of the guaranty never arose during the course of negotiations. Both defendants tendered their collateral securities and Ross pledged his savings account. Holender later signed a renewal note on behalf of Carnaby.

The corporation defaulted. In early 1971 Ross had deposited some $1,000 in clients' funds in one of his personal, nontrust accounts at Union Bank. Union Bank set off slightly less than $72,000 from two accounts maintained by the Rosses at Union Bank. After demands by Ross, the bank agreed to return the $72,000 in consideration for additional collateral and a second continuing guaranty and defendants' agreement to release the bank from any claims arising from the setoff.

## I

■ The Rosses argue that the law requires a creditor to sell collateral on demand if it is sufficient in value to satisfy the obligation. Although this is a correct statement of the law (*Fidelity Bank & Trust Co. of N. J.* v. *Production Metals Corp.* (E.D.Pa. 1973) 366 F.Supp. 613; Civ. Code, §§ 2819, 2845) the Rosses waived their rights under Civil Code sections 2819 and 2845. In paragraph 3 of the contract of guaranty, defendants agreed that the bank could alter, accelerate or exchange their time and money for payment, etc., and in paragraph 6, the defendants agreed to waive all rights to require the bank "to apply any security Bank may hold at any time or to pursue any other remedy."

The Rosses argue that the creditors' obligation to sell collateral sufficient to retire the debt upon demand cannot be waived by the surety because such a waiver would be against public policy.

In *Durgin* v. *Kaplan* (1968) 68 Cal.2d 81, footnote 4 [65 Cal.Rptr. 158, 436 P.2d 70], the guaranty in paragraph 6 contained a waiver somewhat similar to the waiver herein. The Supreme Court in *Durgin* held that the defendant therein did not agree to waive the statutory protection of sections 2822 and 2839. In footnote 8 the Supreme Court also said, "We doubt the validity of such a provision in a contract of guaranty, which, contrary to public policy, could require a guarantor to pay the debt of his principal many times over before becoming exonerated." (68 Cal.2d 81 at pp. 89, 90 and fn. 8.) Although this dicta by the Supreme Court is highly persuasive, the courts have clearly held that a guarantor is

permitted to waive his right by contract to require the creditor to proceed against security provided by the principal debtor. (*Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774, 786-787 [78 Cal.Rptr. 761]; *Engelman* v. *Bookasta* (1968) 264 Cal.App.2d 915, 917 [71 Cal.Rptr. 120].) Unless and until these cases are overruled, we find that a waiver of the right to proceed against collateral is valid.

Defendants argue that the *Wiener* and *Engelman* decisions, *supra,* do not involve cases where the surety's own collateral was at stake. If a surety can waive his right to have the creditor proceed against someone else's collateral, we see no reason why a surety should not be able to waive his right to have the creditor proceed against his own collateral.

## II

The Rosses also argue that they could not waive their rights to require the creditor to sell collateral upon demand, because the contract that they signed was an adhesion contract. The bank argues that the doctrine of adhesion contracts has no application where a contract is free from ambiguity. (*Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735 [74 Cal.Rptr. 367].) The rules on adhesion contracts have not been strictly limited to ambiguities. "This rule has been applied to such matters as exceptions to reasonably expected coverage in insurance policies [citations]; clauses exculpating a title insurance company from the consequences of its own negligence [citation]; and limitations on city employees' pensions [citation]." (*Oakland Bank of Commerce* v. *Washington* (1970) 6 Cal.App.3d 793, 799 [86 Cal.Rptr. 276].) The doctrine was not applied to a contract of a continuing guaranty that covered a preexisting loan when the guarantors failed to read the guaranty. In the *Oakland* case there the three guarantors contended that they understood the guaranty to cover only future indebtedness, notwithstanding a definition on the guaranty form that the guaranty covered prior as well as future advances. Two of the three guarantors had not read the guaranty.

The *Oakland* court said (at p. 799): "The failure of the two appellants to read the contract [of guaranty] cannot be charged to respondent bank. Nor can [the] failure of the third, who read it carefully to comprehend its contents. The rule relating to contracts of adhesion does not apply." The *Oakland* court then listed those situations in which adhesion contracts have been found to apply (see above) and contrasted those situations to that of a guaranty contract. The *Oakland* court said, in 6 Cal.App.3d at

page 799: "But in this case the contract of guaranty, in its essential parts, is in positive form, that is, it creates a liability, it does not limit a liability of the preparer of the contract."

█ Similarly, the waiver in the guaranty in the instant case does not limit the liability of Union Bank, the preparer of the contract. However, even if we were to regard the waiver herein as similar or analogous to an attempt to limit the liability of the preparer of the contract, under the particular circumstances before us, the contract is not an adhesion contract. Although, with respect to standardized adhesion contracts between parties of unequal bargaining strength, exclusionary clauses and provisions limiting liability are ineffective in the absence of a plain and clear notification to the public, and an understanding consent (*Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358, 370 [93 Cal.Rptr. 43]), plaintiff Ross may not properly argue that he did not give an "understanding consent" because he failed to read the contract. The bank herein was not responsible for Ross' failure to read the contract.

There are many possible instances in which a contracting party may have unequal bargaining power and may be induced to sign a standardized contract "as is" because he cannot bargain for an alternative form of the standardized document, and because there are no alternative persons or entities dealing in the same transaction that would allow negotiations in changing their standardized forms. But here defendant Ross did not read the guaranty contract and he never attempted to negotiate for the removal of the waiver provisions in the form guaranty. Defendants Ross admit in their brief that "the terms and conditions of the continuing guaranties never arose during the conversations among the bank representatives. . . ." Defendant Al Ross is therefore in a poor position to argue that he had unequal bargaining power when he never made an attempt to negotiate for a removal of the now objected to waiver provision.[1] Had Ross negotiated and the bank refused to remove the waiver clause, he then would have been in a better position to argue that this was an adhesion contract.[2]

### III

The Rosses argue that Union Bank had the burden of proving that the Rosses waived their rights, and that a waiver must be proved by clear

[1] In *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], on which the defendants rely, the parties were far from equal. In the case at bench there is no testimony from which we can infer the bargaining parties were equal or were not equal.

[2] We do not decide this hypothetical fact situation.

and convincing evidence. (*City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104 [48 Cal.Rptr. 865, 410 P.2d 369].) However, the language of the written waiver was clear and unambiguous. It was not the bank's fault that defendant signed the waiver without reading it.

## IV

 The Rosses allege that the trial court erred in failing to make certain specific findings. Defendants point out that there was no express finding on whether the defendants were bound by the express waivers they signed and there was no finding on the value of the collateral securing the Carnaby loan. The court did find that ". . . plaintiff was not required to resort to said collateral prior to the assertion of its claims herein against the Defendants and each of them." Under these circumstances, a finding on the value of the collateral or on the express waiver would have been immaterial.

The Rosses also argue that failure to find on a material issue is even more clearly reversible when the court has openly indicated its misconception of the law. Since the lower court correctly found that Ross waived his rights to have the bank proceed against the collateral, the judge did not have a mistaken concept of the law and the argument is without merit.

The Rosses argue that the trial court erred in failing to find that there was a waiver of their statutory rights as sureties. In the absence of a request for specific findings, a reviewing court must imply in support of the judgment all reasonably necessary factual findings that may be inferred from the findings actually made. (*Smalley* v. *Baker* (1968) 262 Cal.App.2d 824, 838 [69 Cal.Rptr. 521].) It can be inferred from the findings actually made that the court found that the Rosses waived their right to have the bank proceed against the collateral.

 The Rosses object that the trial court made no findings on the adhesion contract issue. This finding may be implied from other express findings. Specifically, the finding under discussion may be implied from the finding that plaintiff was not required to resort to the collateral.

## V

 The Rosses argue that the trial court's findings on duress were based on an incorrect view of the law of setoffs. They assert that the

setoffs were improper because exempt funds retain the benefit of their exemption when deposited in a bank account. (*Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 367 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) They also argue that funds which defendants hold in trust are not subject to execution by their creditors, even if the funds are deposited in appellants' own names; and that "[p]roof that the money in fact belongs to another will defeat an attempt by the creditors of the agent to seize the deposit." (*Kinnison* v. *Guaranty Liquidating Corp.* (1941) 18 Cal.2d 256, 264 [115 P.2d 450].) Although this is a correct statement of the law, "[a] banker is not required to go 'snooping' about to learn from what source his depositors obtain the moneys which they deposit in his bank. . . . [I]n the absence of an agreement with or instructions to the banker that the account so earmarked is a special deposit or is to be used for a specific purpose, the moneys deposited therein are to be regarded as belonging to the general account of the depositor and may be so treated by the bank." (*American Surety Co.* v. *Bank of Italy* (1923) 63 Cal.App. 149, 159 [218 P. 466].) Although the decision may be otherwise where there is a specific public policy arising from a statutory scheme, as in *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266], (where the money actually deposited belonged to another person, and the depositor held it in trust for the true owner), where a bank exercises a setoff, the depositor may not remove the money from the bank where the banker had no knowledge of the trust relation of the money deposited. (*Arnold* v. *San Ramon Valley Bank* (1921) 184 Cal. 632 [194 P. 1012, 13 A.L.R. 320].) The setoffs were not improper.

Since the setoff was not unlawful, the bank's retention of the funds did not constitute duress and the return of the funds to Ross was adequate consideration to support the release and the second continuing guaranty.

In addition, of the $72,000 originally treated as a setoff, only $1,000 were not the personal funds of the Rosses. The return of that amount was adequate consideration for the new guaranty and the release. At the most, the Rosses were entitled to a return of only that $1,000; the demand by the bank for the new guaranty and the release as a condition of returning the $71,000 of the Rosses own money scarcely can be called duress.

Furthermore, the new guaranty and the release were in compromise of a disputed claim. As the authorities above discussed indicate, the right of the bank to setoff the $1,000 deposit was a matter on which reasonable

men well could differ (and on which counsel have differed in this court). A compromise of a claim under those circumstances is adequate consideration. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 156-161, pp. 149-153.)

## VI

The Rosses argue that the computations of interest in the judgment were erroneous. The Rosses claim that the interest calculations reflected in the judgment were not adjusted to discount for the 28 days during which Al Ross' $72,000 was held by the bank pursuant to the setoff. The contention is correct. Although the bank argues that the amount of the setoff was not earlier credited to the Carnaby account because of Ross' insistence that the setoff was improper, it is still true that the bank, and not the Rosses, had control over the money for 28 days. It is agreed that the result was an overcharge in the judgment of $515.05. We modify the judgment accordingly.

Attorneys for the bank request attorney fees on appeal. ■ An agreement providing for attorney fees includes an allowance for fees on appeal. (*Beverly Hills Nat. Bank* v. *Glynn* (1968) 267 Cal.App.2d 859, 870 [73 Cal.Rptr. 808].)[3]

The judgment is modified by deleting the figure of $19,995.46 from line 21 on page two thereof and substituting therefor the figure of $19,481.41; otherwise the judgment is affirmed. On remand, the trial court shall award to the bank such sum as, in its judgment, shall constitute a reasonable attorney fee for the services of its counsel in this court. The bank shall recover its costs on appeal.

Dunn, J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied January 27, 1976, and appellants' petition for a hearing by the Supreme Court was denied March 3, 1976.

---

[3]Since we cannot say that the appeal was frivolous, we deny the bank's request for the award of additional fees or costs on that ground.