[Civ. No. 16156. Third Dist. Apr. 18, 1977.]

LLOYD KORTH, Plaintiff and Respondent, v.
ALVIDA SOUZA et al., Defendants and Appellants.

**COUNSEL**

Thomas M. Zuckerman for Defendants and Appellants.

McDonough, Holland, Schwartz & Allen and Gary F. Loveridge for Plaintiff and Respondent.

**OPINION**

**REGAN, Acting P. J.**—In this action plaintiff Korth sought a writ of mandate to compel the Election Board of Reclamation District No. 317, Sacramento County, charged with the responsibility of conducting a general election pursuant to the provisions of the Water Code, to issue to plaintiff a certificate of election to the board of trustees of the district. The trial court's judgment granted a peremptory writ directing defen-

dants to count the ballots with reformed certificates of acknowledgment to determine which candidates received the highest number of votes to fill two vacancies on the board of trustees.

The candidates at the November 4, 1975, election were plaintiff, James M. Souza and Ebner Schafer. The method of election was as provided in Water Code sections 50700 to 50759, inclusive. Each landowner or legal representative is authorized by statute to vote in person or by proxy and to cast a number of votes fixed by statute, depending upon the value of real estate owned by him or his principal in the district, based on the tax roll. (Wat. Code, §§ 50702, 50704, 50753.) No proxy votes are valid unless authority by a landowner to cast his vote by proxy is given in an instrument in writing "acknowledged and certified in the same manner as grants of real property and filed with the election board." (Wat. Code, § 50759.) The election board has the statutory duty of canvassing the votes cast and issuing certificates of election to the persons elected. (Wat. Code, § 50752.)

Plaintiff obtained proxies from a number of property owners, sufficient in his opinion to ensure his election. These proxy forms were in proper legal order except that most of them contained a defective certificate of acknowledgment of signature by a notary public, Leland Harris. The forms in question were acknowledged as follows:

"Subscribed and sworn to before me this _____ day of _____

"[Seal]

_____

Notary Public "

The correct statutory form of acknowledgment as required by Water Code section 50759 and Civil Code section 1189 is as follows:

" 'State of _____, )
 ) ss.
 County of _____, )

" 'On this _____ day of _____, in the year _____, before me (here insert name and quality of the officer), personally appeared _____, known to me (or proved to me on the oath of _____) to be the person whose name is subscribed to the

within instrument, and acknowledged that he (she or they) executed the same.' "

It was not until about 11 a.m. on election day that plaintiff discovered the certificates of acknowledgment were defective. Since either plaintiff or a friend, Ed Wilson, had been present when each proxy was obtained, they caused to be prepared a new form of acknowledgment on which either plaintiff or Ed Wilson swore they were present at the signing of each proxy form. This new "witness" acknowledgment and an attached notarization by notary James Maxwell, in the proper statutory form, were quickly attached to each proxy form on November 4, 1975.

The proxies were voted at approximately 3:15 on election day. Thereafter, the election board completed the following tentative canvass of votes:

| | | |
|---|---|---|
| 1. | James M. Souza | 2,077,251 |
| 2. | Lloyd Korth | 1,898,360 |
| 3. | Ebner Schafer | 931,950 |

Based on this tentative canvass, Souza and plaintiff would have been elected. Plaintiff was so informed by phone by a member of the election board on the evening of November 4, 1975. The validity of the initial vote canvass was thereafter questioned resulting in the present action being commenced.

Civil Code section 1202 provides as follows: "When the acknowledgment or proof of the execution of an instrument is properly made, but defectively certified, any party interested may have an action in the superior court to obtain a judgment correcting the certificate."

The jurisdiction of the trial court to proceed as it has here was considered in *Wedel* v. *Herman* (1881) 59 Cal. 507, where the court stated (at pp. 513-514): "When acknowledgment has been made, according to law, before an officer qualified by law to take it, the party making it has done all that the law requires to make the instrument her act and deed. Her deed thus executed and acknowledged may be valid, though defectively certified. The embodiment of the fact of acknowledgment, in the form of the certificate prescribed by law, devolves upon the officer who has taken the proof of it, and not upon the party making it. In taking

the acknowledgment the officer acts judicially; and if he blunders in certifying to an acknowledgment duly made, or makes a defective or false certificate, he can not alter or amend it, because, after taking the acknowledgment and delivering the return, his functions cease, and he is discharged from all further authority. [Citation.] But what he can not do, may now be done by a Court of equity, for, by Section 1202 of the Civil Code, jurisdiction to correct a defective certificate of acknowledgment has been conferred upon the Superior Court." (See also *Hutchinson* v. *Ainsworth* (1883) 63 Cal. 286, 288.)

On appeal, defendants contend the trial court erred as follows:

1. Error of failure to find clear, present, and ministerial duty of the election board.

2. Error of failure to find the election board was required or had authority to canvass defectively cast ballots.

3. Error of failure to find power in the election board to reform proxies.

4. Error of failure to find a clear right in the plaintiff herein to performance by the election board of any clear, present, ministerial duty.

While there is no specific finding of fact that the election board had a ministerial duty to perform, it was implied from the findings of fact that the only impediment to recognition of the proxy ballots as valid was the problem of the defective certification. Under the heading "conclusions of law," the trial court concluded that it had power to correct and reform the defective certificates *and* that mandamus is the proper remedy to compel canvassing officers [the election board] to discharge their duties and canvass the returns of an election. It matters not that these be designated under a heading "conclusions" rather than "findings." A finding of fact is treated as such, express or implied, even though it may appear under a "conclusion of law" heading. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 323, p. 3127.) Inherent in the court's general findings of fact as well as in the "conclusions" mentioned above is an implied finding that the election board had a ministerial duty to canvass legally valid ballots and that the court had made them so insofar as any defect was known to the court. (See *Union Bank* v. *Ross* (1976) 54 Cal.App.3d 290, 291 [126 Cal.Rptr. 646].)

We have considered the above matters of ministerial duties and defectively cast ballots on their merits, even though the election board could be foreclosed from raising these issues since it did not object to the failure now asserted or request special or specific findings on ministerial (as distinguished from discretionary) duties. (See *City etc. of San Francisco* v. *City Investment Corp.* (1971) 15 Cal.App.3d 1031, 1040 [93 Cal.Rptr. 690].) Moreover, the election board was aware of its right to file objections and offer substitute findings and did so in certain instances. The board requested a finding that it did not have the power to reform defective proxies or canvass defectively cast ballots. The trial court very properly did not include such a finding. Its judgment was that the court (not the board) had the power (and exercised it) to correct the defect in the proxies so as to make them *not* defective.

As for the asserted error in failing to find that plaintiff had a clear right to performance by the election board of any duty to canvass the ballots, the board's argument becomes specious in light of what we have said above. A duty existed in the board to canvass and it was ministerial as found and ordered by the trial court. Plaintiff had a clear, present and legally cognizable right to seek redress by means of his petition for writ of mandate, since he was, as shown by the evidence, one of the legitimate candidates in the election.

In summation, while it is true that the election board originally had discretionary power to challenge, determine validity and refuse to canvass defective proxies, its duty has now become ministerial. The court exercised its power to reform the defect, so there are now proper, legal proxies to be counted, and the court has ordered them counted. Since the judgment is supported by the findings and conclusions, and since the evidence supports these we perceive no legitimate basis for reversal.

The judgment is affirmed.

Paras, J., and Reynoso, J., concurred.