[Civ. No. 52826. Second Dist., Div. Two. May 15, 1978.]

FNB FINANCIAL COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
KAWAI PIANO (AMERICA) CORPORATION,
Real Party in Interest.

**COUNSEL**

Coskey, Coskey & Boxer and Carl Grumer for Petitioner.

No appearance for Respondent.

Murphy & Johnson and Scott L. Johnson for Real Party in Interest.

**OPINION**

**FLEMING, Acting P. J.**—Petitioner FNB Financial Company (Finance Company) brought an action for breach of contract against Kawai Piano

(America) Corporation (Kawai), and sought to attach Kawai's inventory and business equipment. The trial court denied the attachment, concluding that because Finance Company was a secured creditor it had failed to establish its eligibility to attach. We issued an alternative writ of mandate.

Finance and Kawai were parties to a 1974 Floor Plan Financing Agreement (the Agreement), whose terms provided that on sales by Kawai of its pianos and organs to approved dealers, Finance Company would purchase from Kawai the resulting accounts receivable together with the purchase money security interests on the items sold. Kawai guaranteed payment of any defaulting account, and Kawai further agreed to repurchase the defaulting account from Finance Company on demand. On dealer default Kawai, "without notice or demand, shall become immediately liable to [Finance Company] for the full debit balance of the Dealer's Advance Account of the Dealer in default, and the amount thereof shall be paid to FNB Financial forthwith by [Kawai] ... The guarantee *and* liability of [Kawai] hereunder is absolute and unconditional ...." (Italics added.) The present action was instituted when Kawai refused Finance Company's demand to repurchase some $66,000 of accounts receivable previously sold to Finance Company.

Finance Company concedes it holds security interests executed by the dealers on the various pianos and organs bought from Kawai. It contends, however, that Kawai's liability to repurchase defaulting accounts constitutes an obligation separate and apart from Kawai's guarantee of payment by the dealers and constitutes an unsecured obligation. In opposition Kawai argues that we are dealing with a single obligation, viz. accounts owed by the dealers and guaranteed by Kawai; that because the accounts are secured by the various security interests now held by Finance Company, attachment may not issue against any property of Kawai prior to exhaustion of the underlying security.

■ The 1939 amendment to Civil Code section 2787 abolished the distinction between sureties and guarantors. The obligation of the surety on default is now viewed as coterminous with that of the principal debtor. (Civ. Code, §§ 2806, 2807; *Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774 [78 Cal.Rptr. 761]; *American Guaranty Corp.* v. *Stoody* (1964) 230 Cal.App.2d 390 [41 Cal.Rptr. 69].) However, a surety may require the creditor to proceed against the principal (Civ. Code, § 2845), and, if the underlying claim is secured, the surety may remain exempt from attachment. (Code Civ. Proc., § 483.010.)

■ At bench, Kawai's argument would be conclusive if the Agreement involved no more than a contract of guaranty and surety, for when a secured creditor proceeds against a surety on a contract of suretyship he may be required first to exhaust his security, and he may be prevented from attaching property of the surety as long as his security retains sufficient value to cover the amount of his claim. (Code Civ. Proc., § 483.010.)

■ But the Agreement here possesses two aspects. One is traditional suretyship, the guarantee of payment of an account. Under this aspect of the Agreement an action by Finance Company, the creditor, against Kawai, the surety, remains subject to the remedial limitations that apply to an action by a creditor against a surety when security for payment of the account has not been exhausted. But the second, and commercially more valuable, aspect of the Agreement is Kawai's promise to repurchase accounts receivable in default. In our view the promise to repurchase defaulting accounts is separate and distinct from Kawai's promise to guarantee payment, the promise creates a primary liability (cf. *Aronson & Co.* v. *Pearson* (1926) 199 Cal. 286, 291-293 [249 P. 188, 51 A.L.R. 1380]), and the promise is one whose performance is unsecured by any interest in real or personal property. Under the specific terms of the Agreement all rights given to Finance Company are cumulative. By demanding repurchase of accounts in default Finance Company chose to proceed under the second aspect of the Agreement and sought to enforce Kawai's second promise. Since the performance of Kawai's promise to repurchase defaulting accounts is unsecured by any interest in real or personal property, Finance Company on an appropriate showing may obtain an attachment against Kawai. (Code Civ. Proc., § 484.090.) Restrictions on the availability of attachment to enforce Kawai's promise of guaranty (a promise which Finance Company has not pressed) provide no good reason for similar restrictions on enforcement of Kawai's promise to repurchase, a promise which is an original obligation and which does not guaranty the debt of another. The fact that Finance Company has alternative means to seek to recover its investment in commercial paper (i.e., initiation of dozens of lawsuits for small amounts in jurisdictions scattered from Connecticut to New Mexico to Florida), does not foreclose it from the alternative of enforcing Kawai's buy-back promise, for under the Agreement it possesses multiple remedies. In the enforcement of the buy-back promise, attachment is a valuable provisional remedy whose absence could make the promise of Kawai commercially worthless in conditions of economic depression. Under the Agreement, Finance Company is entitled to employ that remedy.

Because we view Kawai's buy-back promise as separate and distinct and cumulative to its suretyship promise, we do not reach the question of the validity of Kawai's waiver of the need to exhaust security prior to attachment. (Cf. *American Guaranty Corp.* v. *Stoody* (1964) 230 Cal.App.2d 390, 396 [41 Cal.Rptr. 69].) A writ of mandate will issue directing the trial court to reconsider petitioner's eligibility under Code of Civil Procedure section 484.090 for the provisional remedy of attachment.

Beach, J., concurred.

**COMPTON, J.**—I dissent.

As the majority correctly points out the 1939 amendment to Civil Code section 2787 abolished the distinction between sureties and guarantor. The state of the law is that the obligation of the guarantor is not independent of, but is identical with, the obligation of the principal debtor. (*Wiener* v. *Van Winkle*, 273 Cal.App.2d 774 [78 Cal.Rptr. 761]; *American Guaranty Corp.* v. *Stoody*, 230 Cal.App.2d 390 [41 Cal.Rptr. 69].) The contract in question cannot be read to be anything but a contract of guaranty of obligations which are themselves secured. The majority, in my opinion, does violence to the spirit of the law in finding a "separate" and "primary" unsecured obligation on the part of Kawai.

If I am correct in my view, Code of Civil Procedure section 483.010 is a complete answer to FNB's contention. Subdivision (b) of that section expressly provides that an attachment may not be issued on a claim which is secured by any interest in real or personal property arising from agreement.

I would affirm the order of the trial court.

A petition for a rehearing was denied June 6, 1978, and the petition of the real party in interest for a hearing by the Supreme Court was denied July 13, 1978. Bird, C. J., was of the opinion that the petition should be granted.