**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**H & S REALTY CO., etc.,**
**Defendant, Appellant.**

No. 87–1061.

United States Court of Appeals,
First Circuit.

Heard June 5, 1987.

Decided July 24, 1987.

F. Bruce Sleeper with whom Michael A. Nelson and Jensen Baird Gardner & Henry, Portland, Me., were on brief, for defendant, appellant.

Gary Fox, Chief Counsel for Special Litigation, Small Business Admin., Washington, D.C., for plaintiff, appellee U.S.

Lauren C. Folsom with whom Frank G. Chapman and Hiscock & Barclay, Portland, Me., were on brief, for third-party defendant, appellee Key Bank of Central Maine.

Before COFFIN, DAVIS * and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

In this meticulously briefed appeal, the parties have presented a vast array of authorities favoring and disfavoring the capacity of a guarantor to waive the commercial reasonableness requirement of section 9–504(3) of the Uniform Commercial Code, Me.Rev.Stat.Ann. tit. 11, § 9–504(3). The question of a guarantor's ability to waive is one not specifically addressed by the drafters of the U.C.C. and has predictably generated a diversity of respectable views. The district court has addressed the issues in a thoughtful and extensive opinion, 647 F.Supp. 1415. We affirm essentially on the basis of the district court's opinion, adding the following observations.

Preliminarily, we comment on the possible implications of *Camden National Bank v. St. Clair*, 309 A.2d 329 (Me.1973). In that case, the Law Court equated an accommodation maker to a debtor entitled to raise the defense of non-compliance with the notification requirements of section 9–504(3). The district court assumed that this holding would also apply to a guarantor and the defense of lack of commercial reasonableness under the same subsection. It then concluded in effect that the Maine court would, if confronted by a guarantor who had manifested no intent to rely on the debtor's collateral, hold the guarantor to its waiver.

* Of the Federal Circuit, sitting by designation.

Appellant asserts in its brief (p. 17) that "there is little question that the Maine courts would hold that ... public policy extends the protections of ... [§] 9–504 to guarantors and prohibits their waiver." Such internal evidence of the Maine court's thinking as there is, however, points in the opposite direction. The court is obviously thinking primarily of the debtor's right of redemption of the collateral, which is directly served by the requirement of notification of intended disposition of the collateral. 309 A.2d at 333. The court had no occasion to reach the issue of waiver, but, if it had, we see no inherent logic extending a debtor's protection to a guarantor who by a lengthy and specific written waiver had foregone any reliance on collateral.

Moreover, the court in *St. Clair* placed major reliance on California law, *Atlas Thrift Co. v. Horan*, 27 Cal.App.3d 999, 104 Cal.Rptr. 315 (1972), for the proposition that compliance with the notice requirement was a condition precedent to a secured creditor's right to recover a deficiency judgment against a "debtor." 309 A.2d at 332–333. It is therefore not without significance that the district court in the present case found "most persuasive" in enforcing a guarantor's explicit waiver the lack-of-reliance-on-collateral rationale of *United States v. Kurtz*, 525 F.Supp. 734 (E.D.Pa.1981), *aff'd without opinion*, 688 F.2d 827 (3d Cir.1982). For in *Kurtz*, Judge Becker endeavors to ascertain what the California courts would hold if the same question were presented. In addition to surveying a number of circuit court decisions involving SBA loans, the *Kurtz* court noted "the willingness of the California courts to allow guarantors to waive Civil Code protection of their security interests,"

citing *Brunswick Corp. v. Hays*, 16 Cal. App.3d 134, 93 Cal.Rptr. 635 (Ct.App.1971); *Wiener v. Van Winkle*, 273 Cal.App.2d 774, 78 Cal.Rptr. 761 (Ct.App.1969). 525 F.Supp. at 746. No internal signals, therefore, indicate that the district court's reading of Maine law was off the mark.[1]

Apart from this rather microscopic scrutiny of *St. Clair*, we look to see whether there are any factors given decisive weight in opposing authorities that should move us to find error. We confess to assigning some weight to the fact that appellant did sign a lengthy and explicit waiver. When we look for countervailing considerations, we find nothing to shift the balance. True, there is the deep-seated policy in the U.C.C. to protect the debtor and to give him the means to minimize economic waste in the disposition of collateral. This protection for the debtor is preserved whether a guarantor has waived commercial reasonableness or not. We are dealing here with a situation one step removed from the debtor and the U.C.C. policy. When a guarantor enters the scene, he may or may not choose to rely on collateral, depending on his review of the risks and considerations, financial and otherwise, that may motivate him. The need for guarantors may signal the fact that a lender perceives the transaction as so uncertain that he wishes unusual security or, in the alternative, unusual flexibility to dispose of collateral in emergency conditions.

In short, in a routine business loan the special position accorded the debtor by the proscription of a waiver serves an important economic function; in the riskier transaction requiring the involvement of a guarantor, that collateral-preserving func-

---

1. Subsequent treatment of this issue in California courts seems to be limited to two conflicting cases. The first, *Rutan v. Summit Sports, Inc.*, 173 Cal.App.3d 965, 219 Cal.Rptr. 381 (Cal.App. 3 Dist.1985), endorses the interpretation of California law in *Kurtz*, adding two additional analogously supportive cases: *Union Bank v. Ross*, 54 Cal.App.3d 290, 126 Cal.Rptr. 646 (1976), and *American Security Bank v. Clarno*, 151 Cal.App.3d 874, 199 Cal.Rptr. 127 (1984). The second, *Connolly v. Bank of Sonoma County*, 184 Cal.App.3d 1119, 229 Cal.Rptr. 396 (1 Dist.1986), mischaracterizes *Kurtz* as interpret-

ing California law as holding flatly "that a guarantor is not a debtor" (rather than merely holding that waiver by a guarantor is not proscribed), and, without citing any California authorities, reached the conclusion that a guarantor should be treated like a primary debtor for all purposes and thus cannot waive defenses under section 9–504(3). No review was sought in *Rutan*; on November 26, 1986 review was denied in *Connolly*. Based on our own reading, we would say that the contest in California is at most a draw.

tion not only diminishes in importance but is counterbalanced by other considerations such as the importance of facilitating the transaction and of leaving it to the guarantor to assess his own interest.

Appellant poses a "worst case" scenario—that if guarantors are not protected even against their own waivers, the secured party could "circumvent its duties and still be able to collect a deficiency from the guarantor no matter how egregiously it violated these provisions." (Brief, p. 18.) By citing to *Ford Motor Credit Co. v. Lototsky*, 549 F.Supp. 996 (E.D.Pa.1982), it is apparently referring to the *Lototsky* court's illustration of circumvention—

> the simple expedient [of the creditor] requiring a debtor to obtain a guarantor. Upon default the party with the most substantial interest in the collateral would be left unprotected by the Code. The result would be to encourage the very type of economic waste which the Code was designed to minimize.

*Id.* at 1004.

This argument seems to us in danger of claiming too much sovereignty for the U.C. C. That is, the code is being looked upon as an insurer of all parties, however tangential, who may become involved in a secured transaction. A party once removed is being given the status for all purposes of a primary debtor. This would be a more appealing argument if we were considering whether to accord the guarantor the protection of section 9–504(3) in the first place. But to assume that guarantors will waive the protection, against their interests, is as speculative an assumption as the contrary. In the event they do execute waivers, we think it likely that such would be motivated by a perceived or other economic advantage and that protection of the collateral would have been deliberately sacrificed. We are unpersuaded that we should undo, on behalf of a guarantor, what is more likely to have been a considered exchange than is true in the case of the debtor.

In sum, while the question is close and courts have differed, we cannot fault the district court for its analysis or conclusion. We therefore affirm its decision that appellant waived any right it might have had to assert the defense of commercial unreasonableness in an action against it to collect a deficiency judgment. This being our view, we do not inquire whether there were genuine issues of material fact as to whether SBA and Key Bank acted in a commercially reasonable manner in disposing of the collateral.

Appellant sought, obscurely in its main brief, more directly in its reply brief, to interject in its appeal the issue whether there was a breach of the duty imposed by Me.Rev.Stat.Ann. tit. 11, § 9–207, on a secured party to "use reasonable care in the custody and preservation of collateral." But it did not recognize the specific—and supported—ruling of the district court that H & S Realty's Statement of Material Facts in Issue made clear that H & S was asserting only a commercial reasonableness defense.

The only other issues meriting discussion are (1) whether the district court erred in holding that Key Bank's and the SBA's duty to act in good faith was satisfied by conduct which met the U.C.C. standard of "honesty in fact," *see* Me.Rev.Stat. Ann. tit. 11, § 1–201(19), and (2) whether the court erred in holding that there were no genuine issues of material fact as to the existence of either a breach of good faith, as defined, or a "willful act or failure to act," the latter constituting an exception to the waiver established by the guaranty agreement.

We look upon the "honesty in fact" standard and the "willful act or failure to act" waiver exception, for the purposes of this case, as coterminous. That is to say that evidence of any dishonesty in encouraging Donoghue to take possession of certain corporate documents or in refusing to take action against Donoghue's alleged looting could also imply a specific purpose " 'to diminish the value of the security in order to intentionally injure' " appellant. *United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843, 848 (10th Cir.1986) (citation omitted). Similarly, any evidence of such a purpose to injure appellant would, under the circumstances of this case, also support

a finding of dishonesty. The only question, therefore, is whether Maine's version of the U.C.C. also incorporates the broader meaning of "good faith" as set forth in the Restatement (Second) of Contracts § 205 (1979), specifically: "abuse of a power to determine compliance or to terminate the contract." *Id.* at comment e.

What appellant means by invoking such a standard is not clear. The quoted language does not reveal whether the abuse of power must be willful, reckless, negligent, or merely inadvertent. Appellant seems to cover all bases as indicated by the following quotation from its brief (at p. 37).

Therefore, as the discretion-holding party, Key Bank was under an implied duty to exercise control over the loan and the loan collateral in good faith to minimize any unnecessary loss to H & S Realty flowing from that guaranty. At the very least, Key Bank was under a duty not willfully to allow theft or deterioration of the collateral and under a duty not to engage in a "conscious lack of diligence" which could result in such deterioration or theft.

To the extent that appellant here invokes a standard involving willfulness, we think the Restatement approach adds nothing to the U.C.C. standard. To the extent that "unnecessary loss" means loss through non-negligent error, it of course can have no application; to the extent that it means loss through negligence, we find ourselves back at square one, the defense that action was taken or not taken in violation of commercial reasonableness. And if what is invoked is a standard of recklessness, we have seen no authority for such an interpretation of "good faith" in the context of the present case.

Accordingly, we have limited our scrutiny of the record to those parts referenced by appellant and to a search for any evidence of dishonesty or intent to injure appellant. What we find is evidence that Key Bank, though suspecting improper activity, even perhaps looting, by Donoghue, refused to initiate an SBA–Attorney General investigation, partly because payments were being made with a fair degree of regularity, and partly because more concrete proof was deemed prudent. There was also evidence that, prior to an auction sale of assets, Key Bank felt that Donoghue should possess corporate records. Whether or not this evidence points to unwise or even negligent action or inaction, there is no intimation of either dishonest motives or intent to do harm to appellant.

*Affirmed.*