[Civ. No. 68754. Second Dist., Div. One. Oct. 13, 1983.]

MISSION INSURANCE GROUP, INC.,
Plaintiff, Cross-defendant and Respondent, v.
MERCO CONSTRUCTION ENGINEERS, INC.,
Defendant, Cross-complainant and Appellant;
MISSION INSURANCE COMPANY, Cross-defendant and Respondent.

**COUNSEL**

Grant & Popovich and Irvin Grant for Defendant, Cross-complainant and Appellant.

Sheppard, Mullin, Richter & Hampton, Paul M. Reitler, David J. McCarty and Edward A. Mendoza for Plaintiff, Cross-defendant and Respondent and for Cross-defendant and Respondent.

**OPINION**

**DALSIMER, J.**—The central issue presented by this case is whether an insurer who declares a dividend on an expired workers' compensation insurance policy may be required to account to the insured as to how it determined the amount of such dividend.

Appellant (Merco) purchased from respondent Mission Insurance Company a participating policy of workers' compensation insurance for the period June 1, 1975, to June 1, 1976. (Respondent Mission Insurance Group, Inc., is the holding company of Mission Insurance Company. Respondents

are referred to herein as Mission except where the name of a specific respondent is needed for clarity.) The policy contained the following provision: "The insured may participate in the earnings of the Company represented by surplus accumulated from premiums on workmen's compensation policies to the extent and upon the conditions determined by the Board of Directors of the Company in accordance with law after the expiration of the policy period to which the dividend is applicable . . . ."

The dividend to which Merco became entitled by vote of the board of directors was payable on July 1, 1977, 13 months after the expiration of the policy. At that time, there remained three unsettled claims under the subject policy, all made by one claimant. Mission had initially established loss reserves for each of such claims in an aggregate sum of $11,300, but on June 15, 1977, it increased the reserves by $10,200.

Mission calculated the amount due under the declared dividend in the following manner:

| | | |
|---|---|---|
| Premiums paid by Merco | | $106,494 |
| Deductions: | | |
| Amounts paid to injured employees | $29,830 | |
| Reserves on unsettled claims | 21,500 | |
| Loss expense—12.5 percent of amounts paid and reserves | 6,416 | |
| Retained premium—25 percent of premiums paid by Merco | 26,624 | 84,370 |
| Amount of dividend | | $22,124 |

On August 8, 1977, Mission forwarded to Merco its check in the sum of $22,124. On the reverse side of the check there was stamped the following legend: "Payment in full for all dividend claims pursuant to policy # WCP 10934-D."

Upon receipt of the dividend check, Merco communicated with Mission and indicated that it was not satisfied, believing that the amount of the dividend should be greater. In that communication, it was requested that Mission extend authority to Merco to obliterate the indorsement on the check so that Merco could make use of the funds without prejudice to its right to claim an additional amount over and above that represented by the check. The letter also requested that Mission inform Merco how it had calculated the amount of the dividend.

Mission denied Merco's request to cash the check without accepting it as payment in full and, rather than complying with Merco's request for further

information, requested that Merco provide to Mission the information which led Merco to conclude that it was entitled to a greater dividend. Merco thereupon returned the check to Mission.

Mission Insurance Group filed this action praying for declaratory relief against Merco and alleging that it had paid the dividend in accordance with the terms of the policy but that a dispute concerning the amount of the dividend had arisen between the parties. Merco's answer admitted that the check had been forwarded to it but affirmatively alleged that it had been returned to Mission and that the amount of the check was less than that to which Merco was entitled. Merco also filed a cross-complaint for an accounting as to the amount of the dividend to which it was entitled. After the matter was at issue, Mission's motion for summary judgment was granted by the trial court and judgment was thereupon entered. It is from that judgment that Merco has appealed.

■ "A defendant moving for summary judgment has the burden of making a factual showing negating the existence of all causes of action on all theories embodied in the complaint and if he fails to discharge that burden, the motion must be denied notwithstanding the lack of opposing declarations. [Citations.]" (*Miles Laboratories, Inc.* v. *Superior Court* (1982) 133 Cal.App.3d 587, 593 [184 Cal.Rptr. 98].) ■ The purpose of a motion for summary judgment is to summarily dispose of those actions wherein there are no triable issues of fact. It is not the office of a motion for summary judgment to resolve issues of fact. " '[I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' [Citation.]" (*Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 585 [118 Cal.Rptr. 818], disapproved on another point in *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86 [130 Cal.Rptr. 321, 550 P.2d 593].) In this case, Merco contends that material issues of fact exist which must be resolved by trial. We agree; accordingly, we reverse.

■ Mission successfully contended in the trial court and maintains in this court that the declaration of a dividend was a matter vested in the "unfettered discretion" of the insurance company's board of directors. Mission states, "As previously discussed, Merco was entitled to the specific amount declared as its dividend by Mission's Board—no more and no less. Under these circumstances, an 'accounting' would consist of informing Merco of the amount of dividend declared by Mission's Board and paying this amount to Merco. In fact, a dividend check in the exact amount declared was tendered to and rejected by Merco. Any requirement of an accounting has therefore been satisfied." The fallacy of this reasoning is that it begs

the question. The question is not whether Mission was vested with discretion, but rather whether the company exercised its discretion in a manner required by law.

"[I]n every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032].)

"The implied covenant [of good faith and fair dealing] imposes obligations not only as to claims by a third party but also as to those by the insured. [Citations.] In both contexts the obligations of the insurer 'are merely two different aspects of the same duty.' [Citations.] '[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' [Citations.] For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it again must give at least as much consideration to the latter's interests as it does to its own. [Citation.]" (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-819 [169 Cal.Rptr. 691, 620 P.2d 141], app. dism. and cert. den. (1980) 445 U.S. 912 [63 L.Ed.2d 597, 100 S.Ct. 1271].)

Mission offers no authority for the proposition that the discretion conferred upon it by the subject insurance policy and by the law could be exercised in an arbitrary or capricious manner. On the contrary, Mission was obliged to exercise its discretion in a manner consonant with the interests not only of the company and its other policyholders, but also in a manner which would be fair to Merco. The days of "unfettered" discretion, if ever they existed, are no more. "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. [Citations.]" (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

The case of *Spindle* v. *Travelers Ins. Companies* (1977) 66 Cal.App.3d 951 [136 Cal.Rptr. 404] is strikingly similar to the case at bench. In that case the defendant cancelled a policy of malpractice insurance which had been issued to the plaintiff doctor. In doing so, the defendant relied upon a clause in the master contract between the defendant carrier and the Southern California Physicians Council that provided that the de-

fendant had an absolute right to cancel a policy of insurance with a particular doctor for any reason upon which it chose to act. The plaintiff contended that the insurance carrier did not cancel the policy in good faith because it had no good reason for cancelling, but that it did so for the improper purpose of attempting, contrary to other provisions of the master contract, to vastly increase the premium charged for the insurance policy.

In treating this issue, the court stated, "Cancellation provisions of a contract are subject to the covenant of good faith and fair dealing just as are other provisions of a contract. No plausible reason exists why cancellation provisions of a contract should be treated differently from other contractual provisions insofar as application of the implied covenant of good faith and fair dealing is concerned." (*Id.*, at p. 958.) The court then quoted the statement from *Cal. Lettuce Growers* that we quote *ante* at page 1065. The court further stated, "Conspiratorial conduct on the part of insurers to avoid the contractual liability they undertake is not countenanced in California [citation], and the evolvement of the doctrine of the implied covenant of good faith and fair dealing *is* an expression of *public policy* in our state. We hold that this same doctrine is applicable to subject an insurer to liability to its insured for cancelling a malpractice insurance policy in accordance with permissible terms of the cancellation provisions of the policy, if the reasons for such cancellation are such as to make the cancellation a violation of the implied covenant of good faith and fair dealing." (*Id.*, at pp. 958-959, original italics.)

By a parity of reasoning, the doctrine of the implied covenant of good faith and fair dealing subjects an insurer to liability to its insured for arbitrarily or unreasonably increasing loss reserves covering insurance claims when the increase adversely affects the amount of a dividend that the insured will receive.

Merco has established a prima facie case that the increase of the loss reserves accomplished a mere two weeks prior to the determination of Merco's dividend was not justified by the facts underlying the claims. Less than a year after the reserves were increased to $21,500, Mission's lawyer opined that a $10,000 settlement demand was excessive, and the case was ultimately settled for $6,558. Had the increase in reserves not occurred prior to the declaration of the dividend, the dividend would have been $11,475 greater than the amount established by Mission. There is thus a triable issue of fact concerning the conduct of Mission in connection with the increase of the loss reserves.

There is also a triable issue of fact as to whether Mission breached its implied covenant of good faith and fair dealing by attempting to obtain

from Merco a release of all further claims as a condition to paying to Merco that sum which Mission admitted was due and owing to Merco as of July 1, 1977. As previously noted, when an insurer unreasonably and in bad faith withholds payment of a claim of its insured, it is subject to tort liability. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 575.) The check proffered from Mission to Merco could not be accepted by the latter without its forfeiting the right to question the accuracy of the amount thereof. (*Potter* v. *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 597 [234 P.2d 16]; *Connecticut Printers, Inc.* v. *Gus Kroesen, Inc.* (1982) 134 Cal.App.3d 54 [184 Cal.Rptr. 436].) Even when Merco pointed out to Mission that it did not wish to accept the funds subject to the condition of release and that it desired to be relieved thereof, Mission refused to comply, stating, "It is corporate policy that the stamped endorsement on the reverse side of the check be placed on all such dividend checks. Therefore we will not be able to furnish your office with the letter of authorization that you mentioned."

■■ ■■ Mission contends both that its imposition of the condition attached to the tender of the check was not in bad faith and also that its tender stopped the running of interest on the obligation. We hold that the conditional tender did not stop the running of interest and that whether such tender was an act of bad faith is a question of fact.

That the conditional tender of the amount due did not stop the running of interest is manifest by a perusal of the provisions of Civil Code sections 1504 and 1494.[1] Although section 1504 provides for the stopping of interest where there has been an offer of performance, section 1494 clearly requires that the offer of performance be free from unwarranted conditions. A tender which is conditional does not come within the provisions of Civil Code section 1504. (*Leatherby Ins. Co.* v. *City of Tustin* (1977) 76 Cal.App.3d 678, 689 [143 Cal.Rptr. 153]; *Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774, 782 [78 Cal.Rptr. 761].)

Mission attempts to escape the teaching of *Leatherby* and *Wiener* by relying upon *Montano* v. *City of South Gate* (1970) 13 Cal.App.3d 446 [91 Cal.Rptr. 523]. *Montano,* however, is clearly distinguishable. In *Montano* the court was dealing not with a disputed claim between two parties where a portion thereof was concededly due, but with a judgment for the payment

---

[1]Civil Code section 1504 provides: "An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof."

Civil Code 1494 provides: "An offer of performance must be free from any conditions which the creditor is not bound, on his part, to perform."

of money which had been duly entered in a superior court action in favor of plaintiff and against defendant. The defendant tendered the amount of the judgment subject to the condition that plaintiff execute a satisfaction of judgment. Plaintiff refused to do so on the grounds that he intended to move for a new trial because the judgment was inadequate. The appellate court ruled that the condition imposed was proper because the law clearly gives to a judgment debtor the right to demand satisfaction of judgment as a condition for the payment of the amount due.

Civil Code section 1525 provides in pertinent part as follows: "It is the public policy of this State, in the best interests of the taxpayer and of the litigant, to encourage fair dealing and to promote justice by reducing litigated matters to the lowest level of jurisdiction. [¶] In case of a dispute over total money due on a contract and [*sic*] it is conceded by the parties that part of the money is due, the debtor may pay, without condition, the amount conceded to be due, leaving to the other party all remedies to which he might otherwise be entitled as to any balance claimed." Merco claims that by this statute the Legislature has required that a debtor pay such sums as are concededly due and that the word "may" in the second paragraph of the statute should be construed by us to mean "shall." Not surprisingly, Mission contends that the word "may" was intended by the Legislature to mean "may." Although we do not find it necessary to determine the meaning of the second paragraph of Civil Code section 1525, we are guided by the Legislature's statement of public policy. We hold that a duty of good faith and fair dealing applies to the resolution of a dispute over the total amount of money due under a contract.

A trier of fact might well determine that under all of the circumstances of this case the attachment of a condition to the payment of money that Mission has always conceded to be due constituted a breach of Mission's implied covenant of good faith and fair dealing. We can find no legal justification for the withholding of payment by Mission of its declared dividend, and, as we have pointed out, the withholding would appear to be contrary to the public policy stated by the Legislature in Civil Code section 1525.

■ Another triable issue of fact concerns whether Mission complied with the provisions of title 10, California Administrative Code, sections 2500 through 2507.1. (All mention of code sections hereinafter refers to title 10, California Administrative Code.) The participation clause of the

policy in question provides that dividends are to be fixed by the board of directors of the company "in accordance with law." Administrative regulations of the Department of Insurance were adopted, in part, "to prevent certain unfair and coercive practices in the payment of dividends . . . ." (§ 2501.) ■ Valid administrative regulations have the force and effect of law. (See *Hamilton* v. *Regents* (1934) 293 U.S. 245, 258 [79 L.Ed. 343, 350, 55 S.Ct. 197]; *Lertora* v. *Riley* (1936) 6 Cal.2d 171, 180 [57 P.2d 140].)

■ Section 2507 requires that the declaration of dividends specify "the dividend plans, scales, tables, formulas or schedules applied or to be applied to determine whether any dividends shall be paid or allowed or the amounts thereof to be allocated to separate policies pursuant to such declaration." Section 2507.1 requires that dividends shall not be unfairly discriminatory and that variations in the amounts of dividends or the percentages of premiums paid as dividends based upon loss or other reasonable considerations must be applied fairly and in a consistent manner. Section 2507.1 further provides that failure to apply in a consistent manner the plans, scales, tables, formulas, or schedules adopted and specified in a declaration of dividends shall be prima facie evidence of unfair discrimination.

If the contention of Mission that the declaration and payment of dividends rests in its sole unfettered discretion which cannot be questioned by the policy holder were to be sustained by this court, then there would, in effect, be no realistic manner by which the provisions of section 2507 or section 2507.1 could be enforced. Such a holding would be contrary to the stated purpose for the adoption of the regulations as set forth in section 2501 and would be contrary also to the public interest as determined by the Insurance Commissioner. Merco has alleged in its cross-complaint that Mission regularly engages in unfair practices in order to reduce the apparent amount of accumulated surplus and thus to reduce the amount of dividends. That such practices, if proven to exist, would be contrary to the public interest requires no explication.

Mission questions whether sections 2507 and 2507.1 apply in this matter as such sections became effective a year after the subject policy of insurance was issued. Section 2500, however, specifically provides that the provisions of the sections here involved became effective April 1, 1976. As Mission stoutly maintains, no right to a dividend could accrue until after the policy expired and then only when such dividend was declared by the board of directors. That determination was made July 1, 1977, 15 months after the amended sections became effective. Mission offers no reason for questioning the applicability of the amended sections, and we can find none.

The judgment is reversed.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied November 2, 1983, and respondents' petition for a hearing by the Supreme Court was denied December 15, 1983.