[No. G002591. Fourth Dist., Div. Three. Dec. 17, 1987.]

WILLIAM KLINGER, Plaintiff and Appellant, v.
REALTY WORLD CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Parts II and III do not meet the standard for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

**1550**

COUNSEL

Edward N. Morris for Plaintiff and Appellant.

Berliner & Maloney and Bruce Zagaris for Defendant and Resppondent.

**OPINION**

**CROSBY, J.**—This is a squabble between a realty company and an agent hired to market one of its franchises. Real estate salesman William Klinger contends the trial court erred in failing to award a commission from Realty World Corporation for the sale of a second franchise. He also challenges the court's computation of prejudgment interest on the commission due for the sale of the first. Only the latter contention has merit.

I

Realty World, a nationwide real estate franchiser, sells area licenses to real estate brokers who then subfranchise offices in their regions. William Janeski was president of Realty World in January 1978 when a great deal of money was found to be missing from a client trust account in the Greater Los Angeles/San Fernando Valley regional franchise, owned by R. W. Western, Inc. Gilbert Wert, a 50 percent owner in R. W. Western, was implicated in the misdeed.

In a settlement with the California Department of Real Estate, Realty World guaranteed repayment of the missing funds by Wert and R. W. Western. To compensate Realty World for this and the damage to its reputation, R. W. Western agreed to divide the large scandal-plagued region. It reconveyed a new Los Angeles region to Realty World and retained a San Fernando Valley region. The settlement also required Wert to divest himself of ownership in any Realty World franchises.

William Klinger, then marketing director for R. W. Western, sold individual franchises to real estate brokers in the regions owned by the company. Following the settlement, Janeski enlisted Klinger's aid to sell the new Los Angeles region, offering him a 10 percent commission for any "Realty World Region or Regions" sold through his efforts. On behalf of R. W. Western, Wert asked Klinger to find a buyer for the San Fernando Valley region, authorizing him "to negotiate a sale of same subject to price, terms and conditions acceptable to me."

Klinger found a buyer interested in purchasing both regions. On February 28, 1978, the principals and Klinger met to negotiate the deals; and the buyer agreed to pay $75,000 for the Los Angeles region and $160,000 for the San Fernando Valley region.

On March 8 Klinger sent a mailgram to Wert confirming the "deal [was] materializing" and memorializing Wert's assent to Klinger's "remuneration." On March 9 Janeski acknowledged Realty World's obligation to pay

a $7,500 commission for the sale of the Los Angeles region. Klinger responded with a letter claiming a 10 percent commission from Realty World on the sale of *both* regions. He followed this with an invoice to Janeski demanding payment of $23,500, the combined commission he claimed for the two sales. At the same time he also sent an invoice to Wert for $16,000 for the sale of the San Fernando Valley region.[1]

On October 3, 1978, Realty World offered to pay the admittedly owed $7,500, but only if Klinger accepted the sum as full satisfaction of the $23,500 he demanded and formally released his claim for the San Fernando Valley commission. Klinger rejected the offer and sued for breach of contract and fraud.

At trial the judge found Realty World was liable for the commission on the Los Angeles region transaction only and awarded Klinger $7,500. Klinger also received prejudgment interest on that commission from March 14, 1978, until October 3, 1978, the date Realty World offered to settle the matter on the terms described above.

## II-III*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

## IV

The trial court determined Klinger had an agreement to receive a commission from Wert and R. W. Western, owners of the San Fernando Valley franchise, but not from Realty World, which did not own the franchise; and Klinger was not awarded a commission for that sale. We must affirm if this decision is supported by substantial evidence. (*D'Amico* v. *Board of Mecical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) It clearly is.

Janeski testified to a conversation with Klinger concerning commissions for sales of regional franchises while the two of them drove to the February 28 meeting with the prospective purchaser of both regions. Realty World was then considering selling several franchises in addition to Los Angeles, prompting Klinger to announce he would want a commission on the sale of the San Fernando Valley franchise. But Janeski responded that Realty

---

[1] Klinger later agreed to accept $9,000 from Wert in payment of that commission. But Wert moved to Oregon and apparently never paid any of this sum to Klinger.

*See footnote, *ante,* page 1549.

World did not own the San Fernando Valley region, adding, "I can hardly agree to pay you on a piece of property that I do not own." Janeski told Klinger he would "have to see Mr. Wert for that one."

Testimony by the buyer confirmed Klinger knew Realty World did not own the San Fernando Valley region. And documentary evidence further proved Klinger's expectation of receiving the commission from *Wert* for the sale of the San Fernando Valley region. This evidence is more than sufficient to support the court's conclusion that Wert, but not Realty World, agreed to pay Klinger a commission on the sale of the San Fernando Valley region and that Wert's breach of this contract created no duty on the part of Realty World to step into his shoes. As the court found, Realty World's entire obligation to Klinger was a $7,500 commission for the sale of the Los Angeles region.

## V

■ Klinger argues the court erred in computing prejudgment interest on the $7,500 commission for the sale of the Los Angeles region. The court awarded interest on the judgment only for the period from March 14, 1978, to October 3, 1978, the date Realty World conditionally tendered payment of that commission to Klinger. Klinger contends he is entitled to interest on the $7,500 until it is paid. We must agree, although his refusal to settle for that amount is virtually indefensible in light of the trial evidence.

Civil Code section 1504 provides, "An offer of payment . . . stops the running of interest on the obligation . . . ." But Civil Code section 1494 qualifies the rule by requiring the offer to be "free from any conditions which the creditor is not bound, on his part, to perform."

The effect of making conditional offers was explored in *Mission Ins. Group, Inc.* v. *Merco Construction Engineers, Inc.* (1983) 147 Cal.App.3d 1059 [195 Cal.Rptr. 781]. There, an insurer claimed its tender of a dividend check bearing the words, "Payment in full for all dividend claims pursuant to [the policy]" stopped the running of interest under Civil Code section 1504. The appellate court disagreed, finding an "unwarranted condition[ ]" in the demand that the insured release its *full* claim before obtaining a lesser, *concededly due* amount. (*Id.,* at p. 1067; see also *Leatherby Ins. Co.* v. *City of Tustin* (1977) 76 Cal.App.3d 678, 689 [143 Cal.Rptr. 153]; *Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774, 782 [78 Cal.Rptr. 761].)

In reaching its conclusion the *Mission* court relied on Civil Code section 1525 which authorizes a debtor to unconditionally pay *part* of a disputed claim, i.e., "the amount conceded to be due," without jeopardizing the

creditor's right to pursue "all remedies to which he might otherwise be entitled as to any balance claimed." (Civ. Code, § 1525.) The rationale for the procedure is explained in the statute itself: "It is the public policy of this State, in the best interests of the taxpayer and of the litigant, to encourage fair dealing and to promote justice by *reducing litigated matters to the lowest level of jurisdiction.*" (Italics added.)

We have found no legal justification in this record for Realty World's refusal to unconditionally pay the sum it admittedly owed to Klinger. It is of no moment that Realty World ultimately prevailed on the merits of the dispute over the $16,000 claim. Klinger was not, in the words of Civil Code section 1494, "bound . . . to perform" in accordance with Realty World's condition. By coercively tying the two sums together, in the hope that Klinger would forego the disputed claim in exchange for the immediate payment of the concededly valid one, Realty World forfeited the right to stop interest on the $7,500.[2]

That portion of the judgment awarding prejudgment interest to Klinger is modified to provide for interest on the sum of $7,500 from March 14, 1978, until it is paid. As modified, the judgment is affirmed. The parties shall bear their own costs on appeal.

Wallin, Acting P. J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 1988.

---

[2] At the very least, Realty World should have "immediately deposited [the conceded sum] in [Klinger's] name . . . with some bank or savings and loan association within this state . . . ." (Civ. Code, § 1500.) That would have stopped the interest from running under Civil Code section 1504. (See, e.g., *General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 829 [220 Cal.Rptr. 291].) Realty World has enjoyed the use of the undisputed sum. It must now pay the tariff in the form of legal interest.