Edwards v. HHS                    CV-92-618-B    02/18/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Florence A. Edwards

    v.                                      Civil No. 92-618-B

Secretary of Health and Human Services


**O R D E R**

In this action, Florence Edwards, ("claimant") challenges a final determination by the Secretary of Health and Human Services ("Secretary") denying her application for Social Security disability benefits.  The court has jurisdiction pursuant to 42 U.S.C.A. § 405(g) (West Supp. 1993).  Currently before the court are Plaintiff's Motion to Reverse Decision of the Secretary and Defendant's Motion for Order Affirming the Decision of the Secretary.  For the following reasons I affirm the Secretary's decision.


## I.  **STANDARD OF REVIEW**

Pursuant to 42 U.S.C.A. § 405(g), the court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Secretary, with or without remanding the cause for a rehearing."
In reviewing a Social Security disability decision, the factual
findings of the Secretary "shall be conclusive if supported by
'substantial evidence.'" Irlanda Ortiz v. Secretary of Health &
Human Serv., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C.
§ 405(g)).[1] Thus the court must "'uphold the Secretary's
findings . . . if a reasonable mind, reviewing the evidence in
the record as a whole, could accept it as adequate to support
[the Secretary's] conclusion.'" Id. (quoting Rodriquez v.
Secretary of Health & Human Serv., 647 F.2d 218, 222 (1st Cir.
1981)). Moreover, it is the Secretary's responsibility to
"determine issues of credibility and to draw inferences from the
record evidence," and "the resolution of conflicts in the
evidence is for the Secretary, not the courts." Irlanda Ortiz,
955 F.2d at 769 (citing Rodriquez, 647 F.2d at 222).

---

[1] The Supreme Court has defined 'substantial evidence' as
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Richardson v. Perales, 91 S.
Ct. 1420, 1427 (1971). "This is something less than the weight
of the evidence, and the possibility of drawing two inconsistent
conclusions from the evidence does not prevent an administrative
agency's finding from being supported by substantial evidence."
Consolo v. Federal Maritime Comm'n, 86 S. Ct. 1018, 1026 (1966).

## III.  BACKGROUND

Claimant was born on August 12, 1952, and currently resides in Manchester, New Hampshire.  She has an eighth grade education, and has previously worked in the shoe manufacturing industry as a stamper and a heat set operator.  Claimant seeks disability benefits from "[f]ebruary 26, 1988 up through and including the present date, due to chronic back pain and a severe foot injury."

### A.  Medical History

Claimant's medical records indicate that in February 1988, she sustained significant injuries when she was forced to jump from a second story window during a fire in her apartment building.  Claimant fractured both her feet, and suffered a compression fracture of her vertebrae.  As a result of these injuries she was hospitalized for approximately one month.  Claimant remained under the care of Dr. Thomas J. Kleeman, M.D., an orthopedic surgeon, and received physical therapy on an outpatient basis.  Over the course of her therapy, claimant's left foot and ankle healed, but sustained a "flattening of Bohler's angle," and the bones of her foot were determined to be "diffusely osteoporotic."

With her doctor's support, claimant attempted to return to work at the Klev-Bro Shoe Company in September 1988.  She was

3

laid off in December 1988, but claimant testified that were it not for the lay off, she would have had to leave the job because her injuries made it impossible to continue working. Dr. Kleeman subsequently ordered the claimant to stop driving because she could not operate the pedals of her car.

In April 1989, Dr. Kleeman performed a subtalor fusion of the claimant's left foot. Dr. Kleeman's office notes indicate that the claimant was walking with a cane, but her feet were still significantly deformed and he speculated that she might continue to have difficulty walking. Eventually, Dr. Kleeman performed the same operation on her right foot as well. Claimant was admitted to the hospital in September 1990 with a diagnosis of degenerative arthritis right subtalor joint secondary to a calcaneal fracture. A CT scan showed a degenerative change in the subtalor joint of her right foot, and claimant was prescribed Demerol. Upon discharge claimant was prescribed Tylenol #4.

Claimant suffered another injury in February 1992, when she fell to her knees. She complained of pain in her neck, shoulders, and lower back. Her physician prescribed Flexoril and Voltaren for pain relief and one month of physical therapy.

4

B.  **Procedural History**

Claimant filed an application for disability insurance benefits on or about May 18, 1989.  The claim was initially denied on June 19, 1989.  Her request for reconsideration was likewise denied on November 2, 1989.  Claimant then requested, and received, a hearing before an Administrative Law Judge (ALJ) on July 31, 1990.  The ALJ found that claimant was not entitled to disability benefits, and a request for review was made to the Appeals Council on September 13, 1990.

In an Order dater May 13, 1991, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ to obtain evidence as to the claimant's foot condition following her 1989 surgery.  The ALJ held a hearing on March 5, 1992 and heard testimony from both claimant and a vocational expert ("VE").  Claimant spoke at the hearing about pain that she continued to experience, her medications and their side effects, her functional abilities, and about the injury she sustained in January 1992.  She also testified about her last work experience at the Klev-Bro Shoe Company.  The VE testified that claimant's past jobs were unskilled and involved both medium and light exertion.  In response to various hypothetical questions, the VE also testified that a person with claimant's assumed limitations

5

would not be able to return to her past work, but that there were several "unskilled sedentary positions" which would accommodate the restrictions.[2]

The ALJ left the record open to give claimant's attorney the opportunity to submit materials including an additional work assessment which would encompass claimant's shoulder injury. After evaluating the documents identified in the record and considering the testimony and arguments presented, the ALJ rendered his decision on May 15, 1992, denying claimant's application for disability benefits.  The ALJ found:

1.  The claimant met the disability insured status requirements of the Act on February 28, 1988, the date the claimant stated she became unable to work, and continues to meet them through December 31, 1992.

2.  The claimant engaged in substantial activity from October 1988 through December 2, 1988 but not thereafter or prior thereto.

3.  The medical evidence establishes that the claimant has severe status post-bilateral ankle fractures with fusion operations, including residual arthritis; hypertension; obesity and complaints of historic chronic lower back pain, but that she does not have an impairment of combination of

---

[2] These jobs included (1) machine operation jobs such as grinding, buffing and polishing; (2) manual assembly; (3) inspection; (4) cashier; and (5) ticket seller.

impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony and allegations regarding her subjective complaints, including pain, were not fully credible [ ].

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for sitting, standing and/or walking for prolonged periods of time without being given the opportunity to change position; lifting and/or carrying more than ten to fifteen pounds occasionally; performing climbing except on a rare basis; performing repetitive balancing, stooping, crouching, crawling and kneeling; performing more than moderate bending and performing work involving some types of moving machinery, heights, temperature extremes, chemicals, humidity and vibration. There are no mental nonexertional limitations due to pain or side-effects of medications (20 CFR 404.1545 and 416.945).

6. The claimant is unable to perform her past relevant work as a machine operator, a splitter and a stamper in shoe manufacturing companies.

7. The claimant's residual functional capacity for the full range of sedentary work is reduced by her limitations.

8. The claimant is a younger individual, having been 36 years old on her alleged onset date (20 CFR 404.1563 and 416.963).

9. The claimant has an eighth grade education (20 CFR 404.1564 and 416.964).

10. The claimant does not have any work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR 404.1568 and 416.968).

7

11. Based on an exertional capacity for sedentary work and the claimant's age, education, and work experience, Section 404.1569 of Regulations No. 4 and Section 416.969 of Regulations No. 16 and Rule 201.24, Table No. 1, of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled" unless the range of sedentary work was significantly compromised.

12. Although the claimant's limitations do not allow her to perform the full range of sedentary work, using the above-cited rule as a framework for decision-making, there is a significant number of jobs in the national economy which she could perform. Examples of such jobs are: a machine operator, an assembler, an inspector and a cashier/ticket seller. These jobs exist in minimum numbers of 67,500 in the national economy which is a significant number.

13. The claimant was not under a "disability," as defined in the Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

The Appeals Council denied claimant's request for review on October 13, 1992. Claimant filed the instant appeal on or about December 7, 1992.

## II. DISCUSSION

### A. Issues

Claimant raises several issues in her motion for reversal. She asserts that: 1) the ALJ failed to obtain medical evidence from her primary treating physician; 2) the ALJ failed to

8

properly consider claimant's subjective pain complaints, medication side effects and the severity of claimant's psychological problems; 3) the ALJ did not fully and accurately describe claimant's physical limitations in posing hypothetical questions to the VE; and 4) the ALJ wrongly concluded that claimant was capable of performing a number of jobs that were available in the national economy in significant numbers.[3]  I address each argument in turn.

B.   **Analysis**

1.   The Secretary's Duty to Develop an
Adequate Record

Claimant first contends that the ALJ failed to obtain certain office notes from her treating physician that were necessary to allow the ALJ to evaluate her claim.  I disagree.

The Secretary has a duty to insure that disability determinations are made on an adequate record.  However, this duty is not absolute.  As the First Circuit Court of Appeals has

---

[3]Claimant also argues that the ALJ erred in failing to accept her contention that her effort to return to work after being injured in 1988 was "an unsuccessful work attempt."  I do not address this claim because it has no bearing on the ALJ's determination that claimant is not entitled to disability benefits.  For the same reason, I also need not address claimant's contention that the ALJ wrongly failed to reopen a prior application for benefits for the same injuries.

9

observed, the Secretary's duty to ensure that an adequate record is produced is heightened "where the [claimant] is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled. . . ." Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991) (quoting Currier v. Secretary of Health, Ed. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980)).

Applying this standard here, I find no circumstances which would justify any heightening of the Secretary's duty to develop the record. Nor is this a case where the missing office notes were necessary to permit the ALJ to fairly evaluate the claim. First, claimant was represented by competent counsel at the administrative hearing and counsel was given ample opportunity to produce a complete record. Second, the ALJ's decision is well supported by the evidence that was produced. Thus, I cannot conclude that the claim is substantial on its face. Third, I have been presented with no evidence suggesting that the missing office notes were essential to a reasoned evaluation of the claim. I am unwilling to remand this case on the speculation that the missing office notes will be discovered and prove so

10

important that they will cause the ALJ to reconsider his decision.  In short, I conclude that the ALJ did not breach his duty to take reasonable steps to insure that his decision was based on an adequate record.

2.  <u>Pain Complaints, Medication Side Effects, and Psychological Problems</u>

Claimant next contends that the ALJ ignored her subjective pain complaints, medication side effects, and the severity of her psychological problem.  This argument is also without merit.

In determining the weight to be given to allegations of pain, the First Circuit has stated that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings."  <u>Dupuis v. Secretary of Health and Human Services</u>, 869 F.2d 622, 623 (1st Cir. 1989) (citing <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19, 21 (1st Cir.1980)).  Further, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his [or her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."  <u>Frustaglia v. Secretary of Health and Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987).

11

Here the ALJ carefully considered the claimant's pain complaints as well as the relevant medical evidence concerning her condition from three doctors. He identified specific evidence in the record to support his conclusion that claimant's subjective pain complaints were not fully credible. I find no reason to question the ALJ's findings concerning the claimant's pain complaints.

Contrary to claimant's assertions in this court, the ALJ also carefully considered the potential that prescribed medications could have had disabling side effects. The only evidence of a medication side effect in the record is claimant's contention that she felt drunk when she took Flexoril. However, as the ALJ observed, claimant dealt with this side effect by taking the medication at night. Moreover, there was substantial evidence in the record to support the ALJ's conclusion that the other medications claimant took were reasonably effective in addressing claimant's pain complaints without serious side effects.

Finally, the ALJ correctly noted that there was no medical evidence suggesting that the claimant suffered from a severe and persistent mental limitation and, in fact, claimant did not allege a disability because of one. In sum, all of the ALJ's

12

findings regarding claimant's subjective pain complaints, medication side effects, and the severity of claimant's psychological problems, were supported by substantial evidence in the record.

### 3. Hypothetical Questions

Claimant next contends that the hypothetical questions posed to the VE by the ALJ did not fully and accurately describe her physical and non-exertional limitations. I disagree.

The Secretary concedes that once the claimant has proven that she is incapable of returning to her prior jobs, as she did here, the Secretary has the burden of coming forward with evidence of specific jobs in the national economy that the claimant is capable of performing. Arocho v. Secretary of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982). The Secretary can meet her burden of proof on this issue by relying on the testimony of a vocational expert, but in order for the VE's answer to the hypotheticals posed to be adequate, "the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Id. Here the ALJ relied on the medical reports of two of claimant's examining physicians, Drs. Shea and Wachs, to form his hypothetical questions.

13

First, the ALJ found that Dr. Shea made specific findings which were helpful in evaluating claimant's condition even though he did not fill out RFC forms. Dr. Shea determined that the claimant could sit without difficulty so long as she was allowed to shift positions occasionally, but that her ability to stand and walk were "significantly limited." He found that claimant's ability to lift and bend was moderately limited, and that her use of a cane was justified. These limitations were the basis for the ALJ's second hypothetical:

> Walking is significantly limited. Need to change a position from sitting and lifting and bending are moderately limited. Now, I realize that I haven't given you really any limitations here, so I'm going to have . . . to try to the best of my ability here, try to interpret what those limitations mean. With, with walking, standing and sitting of limited, and need to change position . . . I would make all those three considerations that the claimant needs to change of position at will, which would be, you know, as needed rather than significantly limited . . . And lifting and bending is moderately limited, that would I think allow for, for a sedentary work function. So the main thing is that I'm kind of interpreting this... to mean a change of position at will.

Although Dr. Shea's assessments were considered "nebulous" by the ALJ because they were not specifically tailored to the usual RFC form, he gave the VE Dr. Shea's own limitations on walking, bending, and lifting, and interpreted the sitting limitations as an ability to change position at will; a fair,

14

even generous assessment of her limitation as described by the doctor. Even with Dr. Shea's assessment in mind, the VE testified that the claimant was able to perform jobs that were available in the national economy in significant numbers.[4]

Dr. Wachs examined claimant in November 1991. He used the RFC form to indicate that claimant had limitations of being able to sit for only 30 minutes at a time, 2-3 hours per day. He indicated that she could walk for a total of 1-1 & 1/2 hours without interruption in an 8 hour day, that lifting and carrying was limited to 10-15 pounds occasionally, that she could only rarely climb, and balancing, crouching, and that stooping could be performed only occasionally. He gave further limitations on exposure to certain hazards in the workplace, such as chemicals, temperature extremes, and some types of moving machinery. All of these limitations were included in the ALJ's hypothetical question to the VE:

> [C]lamaint was limited to a sedentary work function
> with the following medical limitations. Lifting and
> carrying is effected. The claimant could lift and
> carry 10 to 15 pounds occasionally throughout the 1/3
> of an 8 hour day. And occasionally maximum frequency
> 1/3 to 2/3 of an 8 hour day. Standing and walking is

---

[4] These jobs included (1) machine operation jobs such as grinding, buffing and polishing; (2) manual assembly; (3) inspection jobs; (4) cashier; and (5) ticket seller.

15

> effected by the impairment.  In an 8 hour day the
> claimant could, could walk a total of 1 to 1-1/2 hours
> without interruption.  Sitting is also effected.  In an
> 8 hour work day the claimant could sit for a total of 2
> to 3 hours probably, and without interruption 1/2 hour.
> Could rarely climb stairs -- in parenthesis, could
> occasionally balance, stoop, crouch, kneel and crawl.
> Apparently reaching, handling, feeling, pushing,
> pulling, seeing, hearing, and speaking are not effected
> at that particular time.

After the ALJ also included the appropriate environmental factors such as no humidity and vibration, the VE testified that despite these limitations, claimant was capable of performing jobs which were available in the national economy in significant numbers.[5]

The record clearly demonstrates that the hypotheticals posed by the ALJ were based on the medical evidence supplied by Drs. Shea and Wachs.  Thus, they included the necessary limitations as provided by claimant's medical evidence, and as such they were sufficient in describing her medical condition.  Cf., Arocho, 670 F.2d at 375.

### 4.  Defining "Significant"

Claimant's final contention is that the number of available jobs identified by the VE in response to these hypothetical questions were too small to qualify as "significant."  In order

---

[5] These jobs were the same as listed in footnote 4, with reductions in the percentage of the jobs that claimant would be able to perform.

to establish that a significant number of jobs exist in the national economy, "the Secretary must show that compatible work exists in one or more occupations and in significant numbers (not isolated jobs) in the region where the claimant lives or in several regions of the country." Keating v. Secretary of Health and Human Services, 848 F.2d 271, 276 (1st Cir. 1988) (citing 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. 404.1566(b)(1993)). No precise formula is given, and what constitutes a "significant" number greatly depends on the facts of the case. See Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1479-80 (9th Cir. 1989) (1,266 jobs a significant number); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs is significant number); Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 jobs a significant number)). Factors to be considered in making the determination include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." Hall, 837 F.2d at 275. However, "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as

17

applied to a particular claimant's factual situation."  <u>Id.</u>

In the instant case, there was substantial evidence produced in the record to support the ALJ's conclusion that there were well in excess of 50,000 jobs available in the national economy that the claimant was capable of performing despite her physical limitations.  This plainly satisfies the Secretary's burden to show that available jobs exist in significant numbers.

### III.  <u>CONCLUSION</u>

Plaintiff's Motion to Reverse Decision of the Secretary (document no. 10) is denied.  The Secretary's decision is affirmed (document no. 11).

SO ORDERED.

 

 

Paul Barbadoro
United States District Judge

February 18, 1994

cc:  Raymond J. Kelly, Esq.
     Patrick M. Walsh, Esq., AUSA